Javier ORTIZ, Appellant/Cross–
Appellee,

v.

FURR'S SUPERMARKETS,
Appellee/Cross–
Appellant.

No. 08–98–00202–CV.

Court of Appeals of Texas,
El Paso.

May 12, 2000.

Rehearing Overruled July 26, 2000.

John P. Mobbs, Gina Palafox, El Paso, for Appellant.

Mark C. Walker, Steven L. Hughes, Mounce, Green, Myers, Safi & Galatzan, El Paso, for Appellee.

Before BARAJAS, C.J., LARSEN, and McCLURE, JJ.

### OPINION

BARAJAS, Chief Justice.

This is a double appeal from a personal injury suit. For the reasons stated below, we reverse and render in part and reverse and remand in part.

## I. SUMMARY OF THE EVIDENCE

### A. Factual History

Appellant/Cross–Appellee, Javier Ortiz, was employed by S & M Cleaning ("S &

M").[1] S & M provided nightly floor mopping, buffing, and waxing services at several of Appellee's/Cross-Appellant's, Furr's, stores. During the night shift of July 26–27, 1996, Ortiz was assaulted by two of Furr's night stockers, Ryan Skowronski and Arnold Plaza. Ortiz was pushed backward by Skowronski and then pushed forward by Plaza which caused him to fall to the floor and injure his back. Skowronski and Plaza jumped on Ortiz and then walked away laughing and joking, leaving Ortiz on the floor. Ortiz complained of constant back pain, pains in his neck and head, and sought treatment. Ortiz's physician testified that the assault caused a neck and back injury resulting in a permanent physical impairment.

## B. Procedural History

Ortiz filed suit against Furr's and S & M on December 6, 1996, alleging negligence, gross negligence, assault and battery, negligent supervision, and negligent retention.[2] S & M was subsequently non-suited. The case proceeded to trial and the jury rendered verdict for Ortiz, finding (1) he was a borrowed servant of Furr's; (2) Furr's was negligent as a non-subscriber under the Workers' Compensation Act; and (3) Furr's negligently retained and supervised their employees. The jury also found that Ortiz' injury was attributable in part to the negligence of S & M. The trial court rendered judgment for Ortiz against Furr's for $145,034, after reducing damages awarded by the jury by fifty percent (50%), the percentage of responsibility the jury attributed to S & M, and an additional five percent (5%), because of S & M's settlement. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 33.012(b)(2)(A) (Vernon 1997). Both parties filed notices of appeal.

1. S & M settled Ortiz's claims against it and was not a party at trial.

2. With respect to his cause of action for negligence, Ortiz specifically asserted that Furr's was liable under the "non-subscriber" negligence section of the Workers' Compensation

## II. DISCUSSION

Ortiz presents two issues on appeal: (1) Whether the trial court erroneously applied the Texas Proportionate Responsibility Act to decrease the damages award to the extent that such damages were awarded under the Texas Workers' Compensation Act for "non subscriber" negligence; and (2) Whether there was legally sufficient evidence to sustain the jury's finding that S & M Cleaning was partially liable for the assault so as to justify a reduced damages award. Furr's raises five issues on appeal: (1) Whether the evidence is sufficient to sustain a finding that Ortiz was a borrowed servant so as to support recovery under Ortiz's non-subscriber negligence theory brought under the Workers' Compensation Act; (2) Whether there was factually and legally sufficient evidence to support the award for past and future mental anguish; (3) Whether the trial court erred in excluding certain evidence concerning Ortiz's criminal record; (4) Whether the trial court erred in refusing Furr's requested jury instruction pertaining to Ortiz's independent contractor status; and (5) Whether there was factually and legally sufficient evidence to support the award for loss of earnings in the past. We begin by addressing Furr's issues.

### A. Furr's Appeal

We begin with a discussion of the legal and factual sufficiency standard of review, which encompasses Furr's Issues No. One, Two and Five. We follow with a discussion of the abuse of discretion standard of review, which encompasses Furr's Issues No. Three and Four.

### 1. Legal and Factual Sufficiency Standard of Review

In considering a "no evidence" legal insufficiency issue, we consider only

Act. *See* Tex.Lab.Code Ann. § 406.033 (Vernon 1996). To prove this, it was incumbent upon Ortiz to establish that he was Furr's employee. To accomplish this, Ortiz alleged that he was Furr's borrowed servant.

the evidence and inferences that tends to support the jury's findings and disregard all evidence and inferences to the contrary. *See Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992); *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634–35 (Tex.1986); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); *Texas Tech Univ. Health Sciences Ctr. v. Apodaca,* 876 S.W.2d 402, 412 (Tex.App.— El Paso 1994, writ denied). If more than a scintilla of evidence supports the questioned finding, the "no evidence" issue fails. *See Tseo v. Midland Am. Bank* 893 S.W.2d 23, 25 (Tex.App.—El Paso 1994, writ denied); *Hallmark v. Hand,* 885 S.W.2d 471, 474 (Tex.App.—El Paso 1994, writ denied).

■ An "insufficient evidence" or factual insufficiency issue involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. The test for factual insufficiency issues is set forth in *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). In reviewing an issue asserting that a finding is against the great weight and preponderance of the evidence, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact, as well as evidence which tends to disprove its existence. It is for the jury to determine the weight to be given to the testimony and to resolve any conflicts in the evidence. *See Carrasco v. Goatcher,* 623 S.W.2d 769, 772 (Tex.App.—El Paso 1981, no writ). The jury's finding should be sustained if there is some probative evidence to support it and provided it is not against the great weight and preponderance of the evidence. *See id.* Thus, we cannot substitute our judgment for that of the fact finder even if we find a fact contrary to that found by the jury. If, however, the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the issue should be sustained.

#### a. Borrowed Servant Doctrine

In Issue No. One, Furr's argues there was no evidence, or factually insufficient evidence, that Ortiz was its borrowed servant at the time of the alleged assault.

■ Texas courts recognize that the general employee of one employer may become the special employee or "borrowed servant" of another employer. *See Sparger v. Worley Hosp., Inc.* 547 S.W.2d 582, 583 (Tex.1977). The "borrowed servant" doctrine is implicated when the nominal or general employer loans or supplies an employee to another, who is termed the special employer. *See Rodriguez v. Martin Landscape Management, Inc.,* 882 S.W.2d 602, 604 (Tex.App.—Houston [1st Dist.] 1994, no writ). The issue of "right of control" is pivotal under the borrowed servant doctrine because the employer who has the right of control is exempted from common law liability. *See Esquivel v. Mapelli Meat Packing Co.,* 932 S.W.2d 612, 614 (Tex.App.—San Antonio 1996, writ denied).

■ The test for determining whether a person is the employee of the original employer or of the borrowing employer is whether the employee is subject to the specific direction and control of the loaning or the borrowing employer. *Id.* If the employees remain under the control of their general employer in the manner of performing their services, they remain the employees of the general employer. *See Producers Chem. Co. v. McKay,* 366 S.W.2d 220, 225–26 (Tex.1963). To determine whether an employee remains a general employee or becomes a borrowed employee, the fact finder determines whose work the employee is performing. The fact finder determines this by ascertaining who has the power to control and direct the employees in performing their work. *See id.,* (citing *Standard Oil Co. v. Anderson,* 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909)).

■ Examples of the type of control an employer normally exercises include when

and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result. *See Thompson v. Travelers Indem. Co. of Rhode Island,* 789 S.W.2d 277, 278–79 (Tex.1990). The right of control is also determined by examining the nature of the general project, the nature of the work to be performed by the employees furnished, length of the special employment, and acts representing an exercise of actual control. *See Producers Chem. Co.,* 366 S.W.2d at 226.

■■■ Ortiz testified that he was employed by S & M. He stated that S & M provided the buffing machines and tools used in performing his cleaning duties, that S & M paid his wages, that all of his tax information came from S & M, that he never received a paycheck from Furr's, that De La Rosa provided instructions in how to perform the details of his job and routinely checked on his performance, that he always considered S & M to be his employer, and that he "told Furr's employees that they weren't his boss and could not tell [him] what to do." On the night in question, Ortiz testified that no one told him to get to work or how to do his job.

The jury was charged, "Do you find from the preponderance of the evidence that on the occasion in question the plaintiff was acting as a borrowed employee of the defendant?" The jury answered the question in the affirmative. The restrictive language, "on the occasion in question," is very important. While evidence was introduced that on other occasions and at other Furr's stores, S & M employees were directed to perform certain tasks, there is no evidence that on the night in question, Ortiz was acting at the direction or under the control of a Furr's employee.

In reviewing the record and using the above standards of review, this Court concludes that there was no evidence for the jury to conclude that Ortiz was a borrowed employee of Furr's on the occasion in question. Accordingly, we sustain Furr's Issue No. One.[3] We proceed with Furr's challenges to the damages award.

### b. Mental Anguish Award

In Issue No. Two, Furr's contends there was no evidence, or factually insufficient evidence, to support the award for past and future mental anguish.

■■■ In addressing mental anguish damages we are guided by the Texas Supreme Court's decision in *Saenz v. Fidelity and Guar. Ins. Underwriters,* 925 S.W.2d 607 (Tex.1996) and our own opinion in *Worsham Steel Co. v. Arias,* 831 S.W.2d 81 (Tex.App.—El Paso 1992, no writ). Mental anguish has been defined in such a way as to imply:

> [A] relatively high degree of mental pain and distress; it is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these, and it includes mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

3. As noted in footnote number two, Ortiz alleged a cause of action for negligent failure to provide a safe work environment under the non subscriber section of the Workers' Compensation Act. Because there is insufficient evidence to sustain the jury's determination that he was a borrowed servant of Furr's at the time of the injury, this theory of liability cannot support the damages award. Accordingly, Ortiz's Issue Number One, in which he argues the court erroneously applied the Proportionate Responsibility Act to his recovery under the Workers' Compensation Act, becomes moot. Additionally, because Ortiz also alleged (and the jury found) that Furr's was negligent in the supervision and retention of the employees who injured Ortiz, and because Furr's has not challenged these theories of liability, the damages award, assuming sufficient evidence, is affirmable under these alternative theories.

*Worsham Steel,* 831 S.W.2d at 85–6 (citing *Trevino v. Southwestern Bell Tel. Co.,* 582 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1979, no writ)); *see also Havens v. Tomball Community Hosp.,* 793 S.W.2d 690, 692 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Underwriters Life Ins. Co. v. Cobb,* 746 S.W.2d 810, 819 (Tex. App.—Corpus Christi 1988, no writ); *Group Hosp. Services, Inc. v. Daniel,* 704 S.W.2d 870, 878 (Tex.App.—Corpus Christi 1985, no writ); *Gill v. Snow,* 644 S.W.2d 222, 224 (Tex.App.—Fort Worth 1982, no writ); *Ryder Truck Rentals, Inc. v. Latham,* 593 S.W.2d 334, 339 (Tex.Civ. App.—El Paso 1979, writ ref'd n.r.e.).

██ In *Saenz v. Fidelity and Guaranty Insurance Underwriters,* the Supreme Court reaffirmed *Parkway Co. v. Woodruff,* 901 S.W.2d 434 (Tex.1995), and found that mental anguish damages could not be awarded without either " 'direct evidence of the nature, duration, or severity of [plaintiffs'] anguish, thus establishing a substantial disruption in the plaintiffs' daily routine,' " or other evidence of " 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.' " *Saenz,* 925 S.W.2d at 614 (citing *Parkway,* 901 S.W.2d at 444). Not only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount awarded. *Saenz,* 925 S.W.2d at 614.

██ Furthermore, mental anguish includes a mental sensation of pain resulting from "such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair or public humiliation or a combination of any of these." *Wal–Mart Stores, Inc. v. Odem,* 929 S.W.2d 513, 528 (Tex.App.—San Antonio 1996, writ denied), citing *GAB Business Servs., Inc. v. Moore,* 829 S.W.2d 345, 350 (Tex.App.—Texarkana 1992, no writ). Texas courts have interpreted the definition of mental anguish to mean that recovery is warranted in such cases where the plaintiff's mental pain has risen to such a level that it has rendered him incapable of dealing with certain everyday activities. For instance, as a result of the mental pain, the plaintiff suffers from a myriad of negative emotions. Some of these emotions may manifest themselves in such a way as to make it difficult for the plaintiff to eat, sleep, work, socially interact, or carry on any other activity which, until the time of the alleged injury, he could accomplish on a day-to-day basis without difficulty. *Worsham Steel,* 831 S.W.2d at 86.

██ In the case at bar, Ortiz's ex-wife, Leticia Gates, testified that after the incident, Ortiz's attitude changed, he was "pissed off," yelled at the children, and was always upset. She stated that he suffered from mood changes and the children did not want to be around him. Ms. Gates testified that Ortiz was aggressive, angry, and had a "short fuse." She stated that he had trouble sleeping. She believed their divorce was indirectly due to the problems Ortiz was having at Furr's.

██ In reviewing only the evidence and inferences that tends to support the jury's findings, this Court concludes that there was more than a scintilla of evidence for the jury to conclude that Ortiz suffered compensable mental anguish. We next examine the factual sufficiency of the evidence.

Ortiz testified that after the attack, he felt "offended" and "angry." He testified that he suffered from loss of sleep one to two times a month. However, Ortiz stated that his relationships were normal and his divorce was not a result of the incident at Furr's. Ortiz did not testify to the nature, duration, or severity of his mental anguish, nor did he state how his daily routine was disrupted. Further, Ortiz did not indicate that his mental pain had risen to such a level that it rendered him incapable of dealing with certain everyday activities. Ortiz did not testify to any future problems he anticipated as a result from mental pain, nor did he provide the jury with any evidence on which to base an award

for future mental anguish. For these reasons, we find there was factually insufficient evidence to support the jury's award of $200,000 for past mental anguish and $15,000 for future mental anguish and this finding is against the great weight of the evidence. Accordingly, we overrule that portion of Furr's Issue No. Two which relates to legal sufficiency, but sustain that portion of Issue No. Two which challenges the factual sufficiency of the evidence.

### c. Past Lost Earnings Award

In Issue No. Five, Furr's contends there was no evidence, or factually insufficient evidence, to support the finding for loss of earnings in the past. The jury awarded $10,000 in past loss of income damages.

 Past lost earnings are the actual loss of income due to an inability to perform a specific job a party held from the time of injury to the date of trial. This differs from loss of earning capacity, which is a plaintiff's diminished ability to work after the date of trial. *See Border Apparel-East, Inc. v. Guadian,* 868 S.W.2d 894, 897 (Tex.App.—El Paso 1993, no writ). The burden of proof for lost earnings is greater than that for loss of earning capacity. *See Home Interiors & Gifts, Inc. v. Veliz,* 695 S.W.2d 35, 42 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Bailey v. Merrill,* 582 S.W.2d 489, 490 (Tex.Civ. App.—Beaumont 1979, writ ref'd n.r.e.).

 Ortiz testified that in prior jobs, he never earned more than six to eight dollars an hour. Before working at S & M, Ortiz testified that he worked on a commission basis at Pronto Tune and worked at Duran's earning six dollars an hour. He stated that he never worked full-time for S & M, that it was always less than forty hours a week. Ortiz testified that he had not worked for an entire, eight hour day since the date of his injury because he did not feel well.

In reviewing only the evidence and inferences that tends to support the jury's findings, this Court concludes that there was more than a scintilla of evidence for the jury to award past loss of income damages. We next examine the factual sufficiency of the evidence.

 Ortiz testified that he did not return to work at S & M because of problems with the company. Ortiz testified that he performed some work as an auto mechanic out of his home and had been doing so since the time he was injured. However, Ortiz did not testify to his hourly wages at S & M nor did he produce any pay stubs, wage statements, W2 forms, time sheets, or anything to indicate the number of hours he worked or the salary he earned.

We overrule that portion of Furr's Issue No. Five which relates to legal sufficiency, but sustain that portion of Issue No. Five which challenges the factual sufficiency of the evidence.

### 2. Abuse of Discretion Standard of Review

 "A [party] who attacks the ruling of a trial court as an abuse of discretion labors under a heavy burden." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding). The test for abuse of discretion is not whether, in the opinion of this Court, the facts present an appropriate case for the trial court's actions. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985) *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Amador v. Tan,* 855 S.W.2d 131, 133 (Tex.App.—El Paso 1993, writ denied). Another way of stating the test is whether the act was arbitrary or unreasonable. *See Downer,* 701 S.W.2d at 242 (citing *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984)); *Amador,* 855 S.W.2d at 133. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate

judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *See Downer,* 701 S.W.2d at 242 (citing *Southwestern Bell Telephone Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex. 1965)). A mere error of judgment is not an abuse of discretion. *See Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex.1989).

### a. Exclusion of Ortiz's Guilty Plea

In Issue No. Three, Furr's asserts the trial court improperly excluded evidence of Ortiz's plea of guilty to marijuana possession and time in jail. Furr's argues that the jury should have been informed of these events because they relate to Ortiz's claim of mental anguish.

▮▮▮▮▮ Generally, prior convictions for felonies or misdemeanors involving moral turpitude may be admitted in evidence as impeachment. Tex.R.Evid. 609(a). The trial judge should conduct a balancing test to determine if the probative value of the prior conviction is outweighed by its prejudicial effect. *Id.* The trial court has wide discretion in deciding the question of admissibility, and its decision will not be reversed unless an appellant shows a clear abuse of that discretion. *See Theus v. State,* 845 S.W.2d 874, 881 (Tex.Crim.App. 1992).

▮▮▮ The trial court stated that possession of marihuana did not involve moral turpitude. While the statute has recently been amended, deleting the moral turpitude language, the trial court determined that the probative value of admitting Ortiz's guilty plea was outweighed by its prejudicial effect. *See* Texas Health & Safety Code Ann. § 481.121 (Vernon Supp. 1999). Because the trial court has broad discretion in these matters, and Furr's has not demonstrated a clear abuse of discretion, we overrule Furr's Issue No. Three.

In Issue No. Four, Furr's argues that the trial court erred in not including a jury instruction that Ortiz was an independent contractor of S & M and, as such, could not also be a borrowed servant of Furr's.

Furr's argues that this was erroneous because "[t]he court's submission of an instruction concerning borrowed employees, not independent contractors, tended to push the jury to make a finding of borrowed employee." Because we have already sustained Furr's argument that the evidence is not sufficient to support the jury's determination that Ortiz was Furr's borrowed servant, we need not address Furr's Issue No. Four. We now address Ortiz's issues.

### A. Ortiz's Appeal

As noted above, Ortiz raises two issues on appeal: (1) Whether the trial court erroneously applied the Texas Proportionate Responsibility Act to decrease the damages award to the extent that such damages were awarded under the Texas Workers' Compensation Act for "non subscriber" negligence; and (2) Whether there was legally sufficient evidence to sustain the jury's finding that S & M Cleaning was partially liable for the assault so as to justify a reduced damages award.

In Issue No. One, Ortiz argues that it was erroneous to reduce the damages award in direct proportion to the amount of liability the jury attributed to S & M because the proportionate responsibility theory, according to Ortiz, is not applicable to an award based on non subscriber negligence under the Workers' Compensation Act. Because this argument presupposes that the damages award is actually sustainable under that theory of liability, and because we have already determined that the evidence is not sufficient to sustain the jury's finding that Ortiz was Furr's borrowed servant (a prerequisite to non subscriber negligence in this case), we need not address Ortiz's Issue No. One.

In addressing Issue No. Two, we begin once again by setting forth the appropriate standard of review.

### 1. No Evidence Standard of Review

In considering a "no evidence" legal insufficiency point, we consider only the evidence and inferences that tends to support the jury's findings and disregard all evidence and inferences to the contrary. *See Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992); *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634–35 (Tex.1986); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); *Texas Tech Univ. Health Sciences Ctr. v. Apodaca,* 876 S.W.2d 402, 412 (Tex.App.— El Paso 1994, writ denied). If more than a scintilla of evidence supports the questioned finding, the "no evidence" point fails. *See Tseo v. Midland Am. Bank* 893 S.W.2d 23, 25 (Tex.App.—El Paso 1994, writ denied); *Hallmark v. Hand,* 885 S.W.2d 471, 474 (Tex.App.—El Paso 1994, writ denied).

In Issue No. Two, Ortiz argues there is no evidence to support the jury finding that S & M negligently contributed to cause the assault as to the third party cause of action. The jury watched the videotaped deposition of Ortiz's fellow employee, Valentine Mercado. Mercado testified that he had problems with Furr's stockers and he reported this to Moises De La Rosa ("De La Rosa"), the owner of S & M. He stated that De La Rosa told him he would talk to the manager, but that the manager would never do anything and "the same thing would happen all over again." Mercado also stated when Ortiz told him about being tackled and complained of back pains, he told Ortiz that he would talk to De La Rosa and Ortiz should also talk to De La Rosa. Mercado testified that the three other employees who complained of being tackled by Furr's stockers told De La Rosa about the incidents. He stated that he was present and heard two employees complain to De La Rosa about the problems with Furr's stockers.

Ortiz testified that he reported the problems he experienced with the Furr's stockers to De La Rosa on more than one occasion. He further testified that if De La Rosa said that he had never heard from Ortiz that there was any tackling or any similar thing going on, De La Rosa would not be telling the truth. Ortiz stated that he did not report the incidents to a Furr's manager because he thought he was an employee of S & M. However, the day after the assault at issue, Ortiz testified that he reported the incident to Mr. Butler, the store manager, and Mr. McCormack, Butler's assistant.

The jury was charged on the negligence of Ortiz, S & M, and Furr's. As to Furr's, the jury's inquiry was limited to whether Furr's was negligent in retaining or supervising Skowronski and/or Plaza. However, S & M's negligence was in no way limited. The jury found Furr's and S & M each fifty percent (50%) responsible for the assault. The jury obviously weighed the credibility of the witnesses, resolved any conflicts, and determined that S & M was negligent. This Court cannot substitute its conclusions for those of the jury and cannot interfere with the jury's resolution of conflicts in the evidence or pass on the weight or credibility of the witnesses' testimony. In reviewing only the evidence and inferences that tends to support the jury's findings, we find that there was more than a scintilla of evidence for the jury to conclude that S & M was negligent. Accordingly, Ortiz's Issue No. Two is overruled.

We reverse and render the judgment of the trial court to the extent that it found Furr's to be liable to Ortiz for negligence under the non-subscriber negligence section of the Workers' Compensation Act, and we reverse and remand the awards for past and future mental anguish and loss of earnings in the past for a redetermination of those damages.[4]

---

4. Once again we note that, in addition to a cause of action for negligence under the

Workers' Compensation Act, Ortiz alleged (and the jury found) that Furr's was negligent in the supervision and retention of the employees who injured Ortiz. In the instant appeal, Furr's has not challenged the latter two theories of liability, nor has it challenged the jury findings as to damages for physical pain, physical impairment, or reasonable and necessary medical expenses.