# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-00-00132-CV

---

**Wal-Mart Stores, Inc., Appellant**

**v.**

**Matthew Don Myers, Appellee**

---

### FROM THE COUNTY COURT AT LAW OF TOM GREEN COUNTY
### NO. 96C129-L, HONORABLE DAVID B. READ, JUDGE PRESIDING

---

Appellee Matthew Don Myers brought suit against Wal-Mart Stores, Inc., seeking actual and punitive damages for false imprisonment and intentional infliction of emotional distress. The jury found Wal-Mart liable for false imprisonment and awarded Myers $10,000 in actual damages for mental anguish and $20,000 in exemplary damages. Wal-Mart appeals the verdict by challenging the factual and legal sufficiency of each damage amount awarded. We will affirm in part and reverse and render in part.

### FACTUAL AND PROCEDURAL BACKGROUND

The management of the Wal-Mart Supercenter in San Angelo suspected that Matthew L. Myers was falsifying his time card and collecting unearned wages. A Wal-Mart official attempted to contact Myers by telephone but reached the residence of appellee Matthew Don Myers instead. The Wal-Mart official left the following message on Myers's answering machine: "Matt, this is Wal-

Mart. If you could please come up here between four and five today, preferably about 4:30, we have your check. Thank you." Myers received this message and decided to resolve the issue in person.

Myers testified that he entered the Wal-Mart Supercenter on the afternoon of December 20, 1994 and identified himself as Matthew Myers to an employee at the customer service desk. He told the employee that he was there to pick up a check. A female employee escorted Myers to a private area of the store. As he was being led through this area, two Wal-Mart employees immediately noticed that this was not Matthew L. Myers. The employees informed John McDaniel, the regional loss-prevention officer, that he had the wrong person; nevertheless, McDaniel confronted Myers. McDaniel took Myers by the arm and led him into a small room filled with video surveillance equipment.

Two other individuals entered the room, and Myers believed he heard the door lock behind him after they entered. Myers told McDaniel that there must have been a mistake or misunderstanding and that he did not understand why they were locking him in this small room. McDaniel responded by asking Myers a series of pointed questions. After approximately four to five minutes of questioning, Myers confirmed that he was not the individual Wal-Mart wanted by presenting his driver's license, social security card, and university identification to McDaniel.

Myers testified that despite his efforts, McDaniel persisted in his inquiry. McDaniel asked about Myers's employment and scholastic status and asked if he could contact Myers's employer and the Dean of Angelo State University. During the course of this interrogation, Myers repeatedly asked to leave. McDaniel ignored the requests and continued the interrogation.

According to Myers's testimony, he felt that if he had attempted to leave he would have been physically restrained by one or more of the three other people in the room.

Finally one of the three individuals in the room informed McDaniel that he was speaking to the wrong Matthew Myers. Again, McDaniel proceeded to ask Myers more questions. Eventually, an eyewitness was escorted into the room and confirmed that Myers was not Matthew L. Myers. Nevertheless, the questioning continued. Myers spent a total of forty-five minutes in the small room at the Wal-Mart Supercenter being questioned by McDaniel.

Myers testified that he was never employed at Wal-Mart. He worked at the Bentwood Country Club and attended Angelo State University. As a result of this experience, Myers testified that he suffered acute sleep deprivation and feared imminent termination from his job or expulsion from school. He also testified that he experienced stomach pains and general feelings of panic. His condition caused him to withdraw from campus life at Angelo State University.

Myers brought this suit seeking damages, both actual and exemplary, for false imprisonment and intentional infliction of emotional distress. At trial, the jury found Wal-Mart liable for false imprisonment and awarded Myers $10,000 in actual damages for mental anguish and $20,000 in punitive damages. Wal-Mart asserts six points of error, essentially complaining of the factual and legal insufficiency of the evidence.

**STANDARD OF REVIEW**

In analyzing a "no evidence" or legal insufficiency issue, we consider only the evidence and inferences that tend to support the jury's findings and disregard all evidence and inferences to the contrary. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex. 1992); *Pool v. Ford Motor Co.*, 715

3

S.W.2d 629, 634-35 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Ortiz v. Furr's Supermarkets*, 26 S.W.3d 646, 651 (Tex. App.—El Paso 2000, no pet.). If more than a scintilla of evidence supports the questioned finding, the no evidence issue fails. *Ortiz*, 26 S.W.3d at 651.

In reviewing factual sufficiency points of error, the court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d 660, 661-62 (Tex. 1951); *Ingleside v. Kneuper*, 768 S.W.2d 451, 455 (Tex. App.—Austin 1989, writ denied).

## DISCUSSION

### *Mental Anguish*

The jury found Wal-Mart liable for false imprisonment, which Wal-Mart does not contest. However, Wal-Mart raises three points of error regarding the actual damage award for mental anguish: (1) the evidence was legally and factually insufficient to establish that Myers suffered mental anguish, (2) the evidence was legally and factually insufficient to support the amount awarded for mental anguish, and (3) the trial court erred in refusing to instruct the jury on a legal definition of mental anguish. We will discuss the third point of error first.

### A. *Definition of Mental Anguish*

Wal-Mart complains of the trial court's refusal to submit a definition of mental anguish to the jury in its charge. Courts must define words with technical meaning when issuing jury instructions. *Turner v. Roadway Express, Inc.*, 911 S.W.2d 224, 227 (Tex. App.—Fort Worth 1995, writ denied). Mental anguish, however, is not a technical term, but a term of ordinary significance

and meaning. *Stevens v. National Educ. Ctrs., Inc.*, 990 S.W.2d 374, 379 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *Gulf States Utils. Co. v. Reed*, 659 S.W.2d 849, 854 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). Thus, the trial court did not err in neglecting to define mental anguish. Accordingly, we overrule Wal-Mart's third point of error.

### B.   Existence of Mental Anguish

Wal-Mart asserts that the evidence was legally and factually insufficient to establish that Myers suffered mental anguish. The term "mental anguish" does not lend itself to a precise definition; courts have struggled to articulate a definition for use in assessing a record for sufficiency of evidence to support an affirmative finding on the issue. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). It is commonly held that mental anguish is more than mere disappointment, anger, worry, anxiety, resentment, or embarrassment. *Texas Animal Health Comm'n v. Garza,* 27 S.W.3d 54, 63 (Tex. App.—San Antonio 2000, pet. filed); *Wal-Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 528 (Tex. App.—San Antonio 1996, writ denied). Compensable mental anguish includes a sensation of discomfort resulting from "such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair or public humiliation or a combination of any of these." *Odem*, 929 S.W.2d at 528. Given that the term implies a *high* degree of mental pain and distress, reviewing courts are called upon to "distinguish between shades and degrees of emotion." *Parkway,* 901 S.W.2d at 444. It has become clear, however, that where there is direct evidence of the nature, duration, and severity of a plaintiff's anguish, which establishes a substantial disruption in his or her daily routine, we must sustain an award of damages for mental anguish. *Id*. Such evidence can be from the claimant's own testimony or that of a third party. *Id*.

Myers testified that his experiences at Wal-Mart produced nervousness, anxiety, stomach pains, and sleep deprivation for approximately six weeks. Also, Myers feared imminent termination from his place of employment and expulsion from school. One of Myers's friends testified that Myers withdrew from social activities, which was unusual because he was very amicable and sociable. Taken collectively, these physical and emotional reactions amount to more than mere disappointment or resentment. Reactions of this type would affect one's daily routine. He did not miss work or drop out of school. However, his job was his only means of paying college tuition and supporting himself. Mental anguish requires negative emotions that interfere with daily activities; however, one need not prove that one could not function in society. *Colonial County Mut. Ins. Co. v. Valdez*, 30 S.W.3d 514, 526 (Tex. App.—Corpus Christi 2000, pet. denied) (holding mental anguish satisfied when appellee developed high blood pressure and sleeping disorders because he felt deceived, very angry, and powerless); *Garza*, 27 S.W.3d at 66 (finding evidence of mental anguish sufficient where wife offered testimony that plaintiff was irritable, depressed, stressed, and suffered weight gain, weight loss, sleeplessness, and a breakout of hives); *Texas Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 395 (Tex. App.—Dallas 2000, pet. denied) (finding mental anguish satisfied when appellee experienced feelings of terror, suffered from sleep deprivation, and reduced participation in church activities after being accused of setting fire to her house in order to collect insurance money); *Norwest Mortgage, Inc. v. Salinas*, 999 S.W.2d 846, 862 (Tex. App.—Corpus Christi 1999, pet. denied) (finding sufficient evidence that plaintiff suffered stomach cramps and was unable to eat or sleep and felt desperate).

In reviewing only the evidence and inferences that tend to support the jury's findings, we conclude that there was more than a scintilla of evidence for the jury to decide that Myers suffered compensable mental anguish. In addition, after reviewing the evidence in its entirety, we conclude that the jury's determination that Myers suffered compensable mental anguish does not go against the great weight and preponderance of the evidence. Both Myers and his friend testified to the former's physical and emotional reactions to the interrogation. The witnesses addressed the duration of these reactions. It is the province of the jury to weigh such testimony and to resolve the difficulties presented by the evidence. *Carrasco v. Goatcher*, 623 S.W.2d 769, 772 (Tex. App.—El Paso 1981, no writ). We conclude that the verdict is not manifestly unjust or so irrational as to shock the conscience. Accordingly, we overrule Wal-Mart's first point of error.

C. *Amount Awarded for Mental Anguish*

Next, we must determine whether the evidence is both legally and factually sufficient to support the amount awarded for mental anguish. Juries normally determine the damage award in a false imprisonment case and may look to physical injuries as well as intangible injuries, such as public humiliation and wounded pride, to calculate the award. *Odem*, 929 S.W.2d at 527-28. We give discretion to the jury in setting the amount because it is best suited to determine whether and to what extent the defendant's conduct caused compensable mental anguish. *GAB Bus. Servs., Inc. v. Moore*, 829 S.W.2d 345, 350 (Tex. App.—Texarkana 1992, no writ).

In addition to the evidence of compensable mental anguish, there must also be some evidence to justify the amount awarded. *Saenz*, 925 S.W.2d at 614. Translating mental anguish into a dollar amount is a difficult task. Thus, juries must be given a measure of discretion in finding

7

damages; however, that discretion is not unlimited. *Id*. ("While the impossibility of any exact evaluation of mental anguish requires that juries be given a measure of discretion in finding damages, that discretion is limited. Juries cannot simply pick a number and put it in the blank."); *Burlington Coat Factory Warehouse of El Paso, Inc. v. Flores*, 951 S.W.2d 542, 548 (Tex. App.—El Paso 1997, no writ). Juries must find an amount that would reasonably compensate for the loss. *Saenz*, 925 S.W.2d at 614. Although reasonable compensation is an elusive concept, finders of fact are charged with calculating such a sum. *Id*.

In reviewing the damages awarded for mental anguish, we require only that the amount awarded compensate the aggrieved party in a fair and reasonable way. *Saenz*, 925 S.W.2d at 614. Having thoroughly reviewed the facts upon which the jury based its award, we conclude that on these facts an award of $10,000 is not unreasonable. Consequently, we overrule Wal-Mart's second point of error.

### *Exemplary Damages*

Wal-Mart raises three final points of error complaining of the exemplary damages award: (1) exemplary damages are unavailable because Myers failed to obtain a finding that his injuries resulted from fraud, malice, or gross negligence; (2) the evidence was factually and legally insufficient to establish a finding of malice; and (3) Myers cannot obtain exemplary damages because he is not entitled to receive actual damages. We will first review whether Myers failed to obtain a finding that his injuries resulted from fraud, malice, or gross negligence.

Punitive damages, unlike compensatory damages, are not designed to make an aggrieved party whole; instead they are intended "to punish the defendant for outrageous, malicious,

8

or otherwise morally culpable conduct," and to serve as a deterrent. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 16 (Tex. 1994). However, exemplary damages may be awarded only if the claimant proves that his personal injury results from fraud, malice, or gross negligence. Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (West 1987); *see also Ingleside v. Kneuper*, 768 S.W.2d 451, 455 (Tex. App.—Austin 1989, writ denied).

The jury found that Wal-Mart, through its agents or employees, exhibited outrageous and morally culpable conduct toward Myers.[1] To support the recovery of punitive damages, however, "there must be a finding of actual malice: ill-will, spite, evil motive or purposing the injuring of another." *Clements v. Withers*, 437 S.W.2d 818, 822 (Tex. 1969). Stated another way, the plaintiff must show that the defendant was "guided by an evil mind which either consciously sought to damage [the plaintiff] or acted intentionally, knowing that its conduct was likely to cause unjustified, significant damage to the [plaintiff]." *Moriel*, 879 S.W.2d at 18. It is not enough that the conduct be condemnable; it must also be done with the requisite intent or in conscious disregard of the plaintiff's rights. "There is no magic about the word 'malicious'—either for judges or for jurors, but the addition of such a word in the instruction would have pointed the jury to the requirement that they must find motive or purpose on the part of the defendants." *Clements*, 437 S.W.2d at 822. The finding obtained by Myers, while perhaps an accurate description of the conduct displayed by Wal-Mart's agent, is inadequate to establish malice on the part of Wal-Mart.

---

[1] The jury answered affirmatively to the following question: "Do you find by a preponderance of the evidence that Defendant, Wal-Mart Stores, Inc., or its agents, servants, and/or employees exhibited outrageous or morally culpable conduct as to Plaintiff, Matthew Don Myers, on the occasion in question?"

Myers had the burden at trial of establishing that Wal-Mart acted with malice; he also had the burden of ensuring that there was a proper instruction on malice in the jury charge. *See* Tex. R. Civ. P. 279. It is clear from a review of the charge conference that Myers had ample opportunity to ensure that such issues were included in the charge. During the charge conference, Wal-Mart submitted an instruction on malice that the trial court denied. Conversely, Myers failed to offer an instruction as to malice.

A party's failure to submit a properly worded issue to the court for submission to the jury constitutes waiver on that theory of recovery or defense. Tex. R. Civ. P. 278; *Cosgrove v. Grimes*, 774 S.W.2d 662, 666 (Tex. 1989). When, as here, the plaintiff fails to request an issue, and an affirmative finding upon such omitted issue is essential to recovery, the trial court must render judgment for the defendant. *See Walker v. Comdata Network, Inc.*, 730 S.W.2d 769, 771 (Tex. App.—Dallas 1987), *dism'd*, 741 S.W.2d 927 (Tex. 1988); *Cameron County v. Velasquez*, 668 S.W.2d 776, 781 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.) (quoting *Bueno v. Globe Indem. Co.*, 441 S.W.2d 643, 648 (Tex. Civ. App.—Corpus Christi 1969, no writ)). As discussed above, the issue of malice was essential to Myers's recovery of exemplary damages. By failing to request or obtain a finding on malice, Myers waived recovery of those damages. *See* Tex. R. Civ. P. 279; *see also Emerald Forest Util. Dist. v. Simonsen Constr. Co.*, 679 S.W.2d 51, 54 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

As there were no findings or instructions concerning malice, there is no support for exemplary damages. Wal-Mart's fourth point of error is sustained.

10

Having concluded that Myers failed to obtain a finding on malice, we do not need to address Wal-Mart's fifth issue on appeal. Because we have previously determined that Myers is entitled to the actual damages, we overrule Wal-Mart's sixth issue.

## CONCLUSION

Having found the evidence legally and factually sufficient to support the jury's award of actual damages, we affirm the judgment in that respect. Because there is no finding of malice to support the award of punitive damages, we reverse and render judgment that Myers is not entitled to punitive damages.

—

David Puryear, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed in Part; Reversed and Rendered in Part

Filed: August 9, 2001

Do Not Publish