

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-11-00364-CV

ROSA CORTEZ                                              APPELLANT

V.

ZACHARY W. WYCHE                                  APPELLEE

----------

## FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In one issue, Appellant Rosa Cortez appeals the trial court's judgment on the jury verdict in favor of Appellee Zachary W. Wyche in this negligence case. We affirm.

---

[1]See Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

On January 18, 2009, Cortez was involved in a three-car accident with Wyche and sued him for negligence.[2]

At the 2011 trial, Arlington Police Officer Blaine Smith testified that he was dispatched to the scene of the accident at around 2:22 a.m. and that he concluded from his investigation that Wyche was following Cortez too closely and struck her from behind, causing her to cross into oncoming traffic and strike a third vehicle head-on. During cross-examination, Officer Smith agreed that he finished the six-month-long police academy in September 2008, that accident reconstruction was only touched on in his training, and that he had been on his own without a field training officer for only thirty to sixty days before the accident. Officer Smith stated that there was no dedicated left-turn lane or signal light where the accident occurred. His report indicated that Cortez had alcohol in her vehicle.

Cortez testified that she had only consumed a "sip" of beer while out with two friends at the Hi-Ho Club on the night of the accident but that one of her friends had been drinking beer in her car's backseat. As Cortez attempted to turn left into an apartment complex and yielded to oncoming traffic, with her car's headlights and left-turn signal "on," Wyche's vehicle struck her car from behind and pushed it into oncoming traffic. Cortez stated that during the accident, "all

---

[2]Wyche drove a white van, and Cortez drove a black Chrysler Sebring. The driver of the other vehicle, a black Pontiac G6, was not a party to the suit.

that beer just flew everywhere, and it got on me." After the accident, her backseat passenger told her to throw the beer away, but Cortez said that she did not recall whether she had thrown the bottle from her car or if her passenger had done it.

Cortez said that the first impact was from behind, by the vehicle driven by Wyche, and the second impact was to the front of her vehicle. She heard the squealing of tires before the impact to her vehicle's rear. Cortez said that she had been at a complete stop for a couple of seconds when Wyche hit her because there were cars coming from the other direction, preventing her from making a left turn. Upon further questioning, Cortez admitted that she was unsure as to exactly how long she was at a complete stop.

During trial, Cortez agreed that there was no dedicated light or turn signal where the accident occurred, but she admitted that in a sworn interrogatory answer, she had said that she was stopped at a red light when Wyche hit her vehicle, and she agreed that this interrogatory answer was incorrect. She also agreed that although she had answered another interrogatory by saying that she had not consumed any alcohol that evening, this answer was incorrect because she had had a sip of beer that evening.

Before Wyche testified, Cortez's counsel sought to introduce Wyche's three April 9, 2003 felony convictions, arguing that these had bearing on Wyche's credibility. The three convictions arose from two offenses committed on August 17, 2002—theft of a vehicle and evading arrest or detention using a vehicle—and

3

another evading arrest or detention using a vehicle offense committed on August 24, 2002. The trial court told Cortez's counsel that he should approach the bench before mentioning the convictions for a determination of their probative value because the trial court was concerned about their potential to inflame the jury.

Wyche testified that he was driving home from his cousin's house when he topped a hill and noticed a black vehicle that was stopped without its lights on. He first became aware of the vehicle when he was approximately fifty feet away, while driving between thirty to thirty-five miles per hour, and began to apply his brakes "almost instantly." Although he had said in his deposition that he was speeding, Wyche explained that he had meant to say that he was accelerating to make it up the hill because his van had a lot of heavy stuff on it. Wyche said that he checked his side mirror but was prevented from changing lanes by an approaching truck; his van skidded into the right rear side of Cortez's car.

Wyche testified that when he exited his van, he noticed a third vehicle "a good car length" away from Cortez's car; his van was twenty to twenty-five feet away from Cortez's car. Wyche said that he did not see or hear Cortez's car hit the third vehicle. He disagreed with Officer Smith's report that Wyche hit Cortez first, and he said that although he was confused at first, he believed that the head-on collision between Cortez's vehicle and the third vehicle happened first, before he hit Cortez's vehicle, which would explain why Cortez's lights were off.

4

During questioning by Cortez's counsel, Wyche testified as follows regarding which vehicle he thought he had hit:

Q. Now, did you tell the police officers that you had seen Ms. Cortez's vehicle earlier before the accident?

A. No. I—I told them that I was confused as to what had happened because when I initially got on Park Row, there was a little car who was riding my tail and when I took—we both took the turn, I took it in front of him and he sped past me. And I was thinking maybe that was the car, but then I realized later on that it wasn't the car—the same car.

. . . .

Q. And so you told the police—or did you tell the police that that was the vehicle that you hit that—the vehicle that had previously passed you?

A. I said I wasn't sure. I told the police I wasn't sure if that was the same vehicle, but some vehicle had sped around me going—driving recklessly basically.

Q. What was the last thing you said?

A. Driving recklessly basically [be]cause I was trying to get the point across to the police.

Q. All right. So—but at the time that you were talking to the police, did you still think—did you think that that was the vehicle that you hit?

A. I wasn't sure.

Q. But did you tell the police—did you tell the police that you thought that was the vehicle that you hit?

A. Probably.

Q. And at the time of your deposition—well, as we sit here today, do you believe that Ms. Cortez's vehicle is the vehicle that passed you on Park Row prior to the time the accident occurred?

A. No.

Q. At the time you gave your deposition in June of 2010, did you think that Ms. Cortez's vehicle was the vehicle that had passed you?

A. No, I don't think so.

Wyche admitted that at his deposition, he had said that he thought the vehicle he had struck had gotten off the freeway behind him and that he had also said at his deposition that he was just guessing. At trial, Wyche explained that "obviously, it wasn't the same car once I saw what kind of car it was. Because the car that passed me was a little—was a little racer car, and [Cortez's] car was a regular sedan." He acknowledged that he was confused when he spoke with police at the scene.

Outside the jury's presence, Cortez's counsel again asked the trial court to allow him to ask Wyche about his felony convictions for impeachment purposes. The trial court considered and discussed the issue of admissibility at length, asking Cortez's counsel if it was in the police report that Wyche told the police that Cortez's vehicle had passed him recklessly before the accident, to which her counsel replied that it was not. The trial court confirmed with both parties' counsel that the police report said that Wyche caused the accident.

The trial court then opined that Wyche had admitted at trial that he had been mistaken in his assumption that the small black car that passed him prior to the accident was the same one he had hit and that he had been confused about whether that was the car involved in the accident. The trial court also noted the

6

possibilities: that Wyche did not relay this information to the police, that the police did not hear him, or that, for some other reason, the police report did not contain this information in finding Wyche at fault. The trial court then concluded that the prejudicial value of the criminal convictions far outweighed their probative value and excluded them from evidence.

Wyche subsequently testified before the jury that a citation was issued to him for following too closely and that he pleaded guilty to that citation, although he said that he did not believe that he was at fault for the accident. Wyche stated that he thought he had acted as a reasonably prudent person in attempting to avoid the accident and that he had used ordinary care, which was why he felt that he was not at fault. He also explained that the police arrived very quickly and that there was already a crowd of people on the scene when he exited the van.

The jury returned a take-nothing verdict in favor of Wyche, the trial court entered judgment on the verdict, and this appeal followed.

### III. Exclusion of Evidence

In her sole issue, Cortez claims that the trial court erred by excluding Wyche's three prior felony convictions.

### A. Standard of Review and Applicable Law

We review a trial court's decision to exclude evidence for an abuse of discretion. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011); *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005); *Sprabary v. Goodman Networks,*

*Inc.*, No. 02-10-00200-CV, 2011 WL 856969, at *2 (Tex. App.—Fort Worth Mar. 10, 2011, no pet.) (mem. op.). An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis in the record for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

Rule of evidence 609(a), which governs impeachment by evidence of conviction of a crime, states,

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, *and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party*.

Tex. R. Evid. 609(a) (emphasis added). In reviewing the trial court's decision to admit or exclude a prior conviction into evidence, we must accord the trial court wide discretion. *K.H. v. Doe*, No. 14-07-00603-CV, 2008 WL 4917976, at *1 (Tex. App.—Houston [14th Dist.] Nov. 18, 2008, pet. denied) (mem. op.) (citing

8

*Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992)); *Ortiz v. Furr's Supermarkets*, 26 S.W.3d 646, 655 (Tex. App.—El Paso 2000, no pet.) (same); *see also* Quentin Brogdon, *Admissibility of Criminal Convictions in Civil Cases*, 61 Tex. B.J. 1112, 1114–15 (1998) (stating that rule 609 provides that the trial court must always balance the probative value of evidence of the conviction against its prejudicial effect and discussing application of factors discussed in *Theus* to civil cases).

In *Theus*, the court of criminal appeals set out a nonexclusive list of factors to be considered in weighing the probative value of a conviction against its prejudicial effect under rule 609(a), including:  (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue.  *Theus*, 845 S.W.2d at 880 (citing *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir.), *cert. denied*, 429 U.S. 1025 (1976)).  The court stated that the application of these factors to a particular case cannot be performed with mathematical precision, and it set out some guidelines to help perform the balancing exercise required by rule 609(a).  *Id*.

The court stated that with regard to the weight given to the first factor, if the crime involves deception, it has a higher impeachment value.  *Id*. at 881; Brogdon, 61 Tex. B.J. at 1114.  The second weighs in favor of admission if the

9

past crime is recent and the witness has shown a "propensity for running afoul of the law." *Theus*, 845 S.W.2d at 881. With regard to the third factor, however, in a criminal case, if the past crime and charged crime are similar, this weighs against admission because the jury would convict on the perception of a past pattern of conduct; "[b]y analogy, in a civil case, if conduct is in issue that is similar to a past crime, then the third factor should weigh against admission." Brogdon, 61 Tex. B.J. at 1114; *see Theus*, 845 S.W.2d at 881. As to the intertwined last factors, "in a civil case, as the importance of a particular witness's testimony and credibility increases, so does the need to allow impeachment of that witness with evidence of a criminal conviction." Brogdon, 61 Tex. B.J. at 1115.

## B. Analysis

With regard to the first factor, in the case before us, Wyche was convicted of theft—a crime involving moral turpitude—and evading arrest. *See Uranga v. State*, 247 S.W.3d 375, 380 n.7 (Tex. App.—Texarkana 2008) ("[T]heft is a crime of moral turpitude."), *aff'd*, 330 S.W.3d 301 (Tex. Crim. App. 2010). But these crimes were not particularly recent: Wyche committed them in 2002 and was convicted of them in 2003. Further, the issue of Wyche's use of ordinary care in relation to the 2009 accident and Wyche's confusion or possible dishonesty about which vehicle he saw pass him are not similar in nature to the 2003 offenses for which he was convicted. Finally, although the parties were the only eye-witnesses and their credibility was an issue in the case, this was not a strictly

10

"he said-she said" case as the investigating officer testified about his accident investigation, and his report finding Wyche at fault was entered into evidence.

The trial court discussed the issue of admissibility at length with both parties' counsel, and it is undisputed that it performed a balancing test, taking into account the arguments of counsel and the circumstances of this case. Therefore, based on our review of the case and the *Theus* factors, we cannot say that the trial court abused its discretion by finding the evidence more prejudicial than probative and excluding the evidence. *Cf. Howard v. Tarrant Cnty*., No. 02-10-00277-CV, 2012 WL 858590, at *1, 3–4 (Tex. App.—Fort Worth Mar. 15, 2012, no pet. h.) (mem. op.) (holding that the trial court did not abuse its discretion by admitting appellant's eight prior felony convictions for robbery into evidence under rule 609 in appellant's personal injury suit against the county for injuries he allegedly sustained as he was transported from one jail to another when, among other things, appellant did not argue at trial or on appeal that the prejudicial effect of his convictions outweighed their probative value). Therefore, we overrule Cortez's sole issue.

## IV. Conclusion

Having overruled Cortez's sole issue, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, WALKER, and GABRIEL, JJ.

DELIVERED: May 3, 2012

11