Cenobio **CORONADO** and Ofelia Coronado, Individually, and as Next Friends of Their Children, Armando, Alicia, Jorge, and Anna Christina, Appellants,

v.

**SCHOENMANN PRODUCE CO.**, Appellee.

No. 14–99–01335–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 6, 2003.

Robert William Higgason, Woodlands, Harold J. Eisenman, Houston, for appellants.

Michelle E. Bohreer, Todd J. Zucker, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and SEYMORE.

## SUBSTITUTE OPINION

CHARLES W. SEYMORE, Justice.

Our opinion issued December 20, 2001 is withdrawn. We overrule appellants' motion for rehearing and issue this substitute opinion.

Appellants Cenobio Coronado and Ofelia Coronado, individually and as next friends of their children, Armando, Alicia, Jorge, and Anna Christina (the "Coronados"), appeal from the trial court's take-nothing judgment entered in favor of appellee Schoenmann Produce Co. We affirm.

### I. BACKGROUND

Farming Technologies, Inc. ("FTI") packages and sells potatoes through distributors under the registered trademark name of "MountainKing Potatoes." Schoenmann is a wholesale distributor of fruits and vegetables, including MountainKing Potatoes. FTI and Schoenmann are located in the same warehouse facility, along with several other businesses. FTI and Schoenmann are owned by the same holding company. It is undisputed that, during all times material to this case, Cenobio Coronado was an employee of FTI. Cenobio was injured while replacing a conveyor belt on a potato cull tank. The tank was owned and located on premises maintained by FTI. The Coronados contend Saul Flores, a co-worker employed by FTI, abandoned his assigned duties and failed to timely turn the conveyor off before Cenobio was injured. Cenobio's arm was mangled when it was pulled between two rollers.

The Coronados maintain that Cenobio was an employee of both FTI and Schoenmann at the time of the accident. This contention is based mainly on the assertion that FTI and Schoenmann both had the right to control Cenobio's work.[1] The Co-

---

1. The Coronados pleaded that FTI and Schoenmann were engaged in a single business enterprise as an alternative theory under

ronados filed suit against Schoenmann alleging negligence and gross negligence based solely on breach of an employer's legal duties. Subsequently, the Coronados added FTI as a defendant. FTI filed, and the trial court granted, a motion for summary judgment based on limitations.[2] The issue at trial was whether Cenobio was an employee of both Schoenmann and FTI. The trial was bifurcated, with the issue of whether Cenobio was an employee of Schoenmann at the time of the accident to be tried first. FTI's status as Cenobio's employer was previously determined by another court.[3]

When the Coronados rested their case after presenting evidence on the joint control issue, Schoenmann moved for a directed verdict. The trial court granted Schoenmann's motion, finding no evidence in the record that: (1) Schoenmann employed Cenobio at the time of the accident; (2) Cenobio was acting in the course and scope of employment with Schoenmann at the time of the accident; (3) Saul Flores was acting as an employee of Schoenmann at the time of the accident; and (4) Flores was acting in the course and scope of employment with Schoenmann at the time of the accident.

## II. APPELLANTS' ISSUES

On appeal, the Coronados contend the evidence shows: (1) Schoenmann and FTI exercised joint control over Cenobio and other FTI workers at the time of his work-related injury; (2) Schoenmann exercised persistent supervisory control over Cenobio and other FTI workers at the time of his work-related injury; and (3) there was a significant overlap in the supervisory ranks of Schoenmann and FTI at the time of his work-related injury. As a preliminary matter, Schoenmann contends the Coronados have waived three of the grounds on which the directed verdict was based. Schoenmann asserts the Coronados have only addressed the ground regarding whether Schoenmann employed Cenobio at the time of the accident, but did not address the other three grounds. We conclude that the Coronados have not appealed the points pertaining to Flores's status as a Schoenmann employee. With respect to the ground that Cenobio was not acting in the course and scope of employment with Schoenmann, we find the Coronados have not waived that ground on appeal. Rule 38.1(e) of the Texas Rules of Appellate Procedure provides "[t]he statement of an issue or point will be treated as covering every subsidiary question that is fairly included." Courts are further directed to liberally construe appellate briefing rules. *Tex. Mexican Ry. Co. v. Bouchet,* 963 S.W.2d 52, 54 (Tex.1998). Keeping these rules in mind, we conclude the issues presented in this appeal fairly include whether Cenobio was acting in the course and scope of employment by Schoenmann at the time of the accident. *See Stephenson v. LeBoeuf,* 16 S.W.3d 829, 843–44 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

which to hold Schoenmann liable; however, this issue was not tried.

2. FTI is not a party to this appeal.

3. After Cenobio filed suit and signed an affidavit stating he was employed by Schoenmann at the time of the accident, FTI filed a declaratory judgment action in the United States District Court. FTI sought a determination as to Cenobio's employment status and reimbursement of approximately $300,000 paid under its Voluntary Employee Injury Benefit Plan. The District Court found Cenobio's injury occurred in the course and scope of employment with FTI. Schoenmann contends this ruling collaterally estopped the Coronados from denying that Cenobio was FTI's employee and from claiming Cenobio was Schoenmann's "borrowed servant" at the time of the injury. Appellants do not contend that Cenobio was Schoenmann's borrowed servant.

## III. STANDARD OF REVIEW FOR DIRECTED VERDICT

A directed verdict is proper when: (1) a defect in the opponent's pleading renders it insufficient to support a judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Knoll v. Neblett*, 966 S.W.2d 622, 627 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). When reviewing a motion for directed verdict, we consider all the evidence in the light most favorable to the nonmovant, disregard all evidence and inferences to the contrary, and give the nonmovant the benefit of all inferences arising from the evidence. *Mayes v. Stewart*, 11 S.W.3d 440, 450 n. 4 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). In this review, we must determine whether there is evidence of probative value to raise a fact issue on the material question presented. *Kline v. O'Quinn*, 874 S.W.2d 776, 785 (Tex.App.-Houston [14th Dist.] 1994, writ denied). If we find any evidence of probative value that raises a material fact issue, the directed verdict is improper and the judgment must be reversed and remanded for a jury determination on that issue. *Columbia/HCA of Houston, Inc. v. Tea Cake French Bakery & Tea Room*, 8 S.W.3d 18, 22 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

## IV. TEST FOR EMPLOYEE-EMPLOYER RELATIONSHIP

The Coronados seek to impose upon Schoenmann the non-delegable duty of an employer to provide a safe place to work; therefore, it is their burden to show that Cenobio was an employee of Schoenmann at the time of his injury. *See Anchor Cas. Co. v. Hartsfield*, 390 S.W.2d 469, 471 (Tex.1965). Under Texas law, the test to determine whether an individual is an employee is the purported employer's right to control the details of that individual's work. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 592 (Tex.1964); *INA of Tex. v. Torres*, 808 S.W.2d 291, 293 (Tex.App.-Houston [1st Dist.] 1991, no writ). In the absence of an express contract of employment or where the terms of employment are indefinite, evidence of the exercise of control may be introduced to establish the right to control. *See Anchor Cas. Co.*, 390 S.W.2d at 471; *INA of Tex.*, 808 S.W.2d at 293. The exercise of control "must be so persistent and the acquiescence therein so pronounced as to raise an inference that at the time of the act or omission giving rise to liability, the parties by implied consent and acquiescence had agreed that the principal might have the right to control the details of the work." *Newspapers*, 380 S.W.2d at 592. However, "the 'right to control' remains the supreme test and the 'exercise of control' necessarily presupposes a right to control which must be related to some agreement expressed or implied." *Id.* at 590. Cenobio's employment status when he sustained injuries is to be determined by all the facts and circumstances surrounding his work at that time. *See Goodnight v. Zurich Ins. Co.*, 416 S.W.2d 626, 630 (Tex.Civ.App.-Dallas 1967, writ ref'd n.r.e.).

The issue of whether Schoenmann was Cenobio's employer at the time of his injury is complicated by the Coronados' claim that FTI and Schoenmann were Cenobio's joint employers at the time of his injury. The Coronados contend they presented evidence sufficient to raise a material fact issue on FTI's and Schoenmann's concurrent control over Cenobio's work at the time of his injury. Here, there is no express contract of employment between Cenobio and Schoenmann establishing either Cenobio's status as a Schoenmann employee or Schoenmann's right to control the details of his work. The Coronados claim, in the absence of such a contract, they

have presented evidence of Schoenmann's "actual and persistent" exercise of control over Cenobio and other FTI workers, thereby establishing Schoenmann as Cenobio's joint employer.

## V. THE JOINT EMPLOYER DOCTRINE

■ In support of their argument that Schoenmann was Cenobio's joint employer, the Coronados rely on section 226 of the Restatement (Second) of Agency, which provides:

> A person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other.

RESTATEMENT (SECOND) OF AGENCY § 226 (1958). They also cite three lines of cases to support their theory that the joint employer doctrine should be applied in this case: (1) application of the doctrine where a purported joint employee caused injury to a third party; (2) application of the doctrine to staff leasing services in the workers' compensation context; and (3) application of the doctrine under the Federal Employers' Liability Act ("FELA"). However, the Coronados' cited cases are factually distinguishable. Here, the Coronados are pursuing a common-law negligence cause of action for breach of nondelegable duties owed by employers to employees.[4] Uniquely, the Coronados seek recovery from multiple, alleged employers who elected not to purchase workers' compensation coverage.

### A. THIRD-PARTY LIABILITY CASES

First, the Coronados cite cases in which courts applied the joint employer doctrine where a purported joint employee caused injury to a third party. *See White v. Liberty Eylau Sch. Dist.*, 880 S.W.2d 156 (Tex.App.-Texarkana 1994, writ denied); *Gulf Oil Corp. v. Williams*, 642 S.W.2d 270 (Tex.App.-Texarkana 1982, no writ); *W. Union Tel. Co. v. Rust*, 55 Tex.Civ.App. 359, 120 S.W. 249 (1909, writ ref'd).[5]

Before the Restatement of Agency was written, the Court of Civil Appeals addressed employer liability under the joint employer doctrine in *W. Union Telegraph*, 120 S.W. at 249. The plaintiff sued Western Union and American District Telegraph Company of Texas for injuries sustained when he was struck by a messenger boy's bicycle. *Id.* at 250. Western Union was in the business of sending and receiving telegrams, and American District rent-

---

4. It is well established that an employer has certain nondelegable and continuous duties to his employees. *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex.1996); *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 754 (Tex.1975). Among these are the duties to furnish a reasonably safe place to work, warn employees of the hazards of employment, supervise employees' activities, and furnish reasonably safe instrumentalities with which to work. *Farley*, 529 S.W.2d at 754. An employer must exercise ordinary care, based on standard negligence principles, in carrying out these duties. *Leitch*, 935 S.W.2d at 117; *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex.1995).

5. The Coronados also rely on *Worley Hosp., Inc. v. Caldwell*, 529 S.W.2d 639 (Tex.Civ. App.-Amarillo 1975), *rev'd sub nom. Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582 (Tex.

1977), in which the court of appeals cited section 226 in holding that several nurses whose negligence injured a patient were servants of both the defendant hospital and the defendant surgeon because they (1) exercised concurrent control over the nurses and (2) the defendant surgeon was the "captain of the ship" while in the operating room. *Id.* at 641–43. However, the Texas Supreme Court stated that the borrowed servant doctrine, not the "captain of the ship" doctrine, should be applied to determine whether the nurses were servants of the surgeon. *Sparger*, 547 S.W.2d at 583–85. The court remanded for the court of appeals to determine whether the jury's finding that nurses were not the surgeon's borrowed servants was against the great and overwhelming weight of the evidence. *Id.* at 589.

ed office space from Western Union and furnished messenger boys to Western Union. *Id.* at 251–52. The court held that the messenger boy was a servant under the control of both Western Union and American District at the time of the accident, and, thus, both were liable to the plaintiff. *Id.* at 250–54.

Later, in *Gulf,* the Texarkana court cited section 226 as authority for imposing joint liability against two employers for injuries to a third party. 642 S.W.2d at 272. The plaintiff was a customer at a Gulf station when he was shot by a security guard who took him for a robber. *Id.* at 271–72. The security guard was employed by Empire Security Agency and furnished to Gulf pursuant to a contract. *Id.* The court affirmed an award for the plaintiff against both Empire and Gulf because there was evidence that Empire and Gulf had joint control over the guard. *Id.* at 272.

Similarly, in *Liberty Eylau,* the court specifically adopted section 226 in holding that one could be the employee of joint employers when an injured third party attempts to impose liability on both employers. 880 S.W.2d at 159–60. The court held that a fact issue existed on whether both the school district and the county transportation department employed a school bus driver whose bus struck the plaintiffs' vehicle. *Id.*

■ Therefore, Texas courts have consistently adopted and applied section 226 when a third party asserts liability against two or more employers under the doctrine of respondeat superior.[6] Section 226 should be applied in such instances; however, as discussed below, many courts have applied it to cases that did not involve liability of a principal to third parties.

Our survey of case law indicates that we may be the first court to acknowledge the obvious; section 226 is included in that portion of the Restatement of Agency entitled:

Chapter 7. Liability Of Principal To Third Person; Torts

Topic 2. Liability For Authorized Conduct Or Conduct Incidental Thereto

Title B. Torts Of Servants

Who Is A Servant.

■ Further, we also may be the first court to acknowledge that section 226 expressly does not apply to joint employers: "A person may be the servant of two masters, *not joint employers,* at one time as to one act . . . ." *See* RESTATEMENT (SECOND) OF AGENCY § 226 (emphasis added). A two-party action is in play when a purported employee pursues a cause of action for negligence against his purported employer(s). A three party action is in play when a plaintiff pursues an action against an employee/agent of two or more principals/employers. Accordingly, we conclude that section 226 is properly applied only when a *third party* asserts vicarious liability against two or more employers.

## B. STAFF LEASING CASES

The Coronados also rely on *Brown v. Aztec Rig Equip. Inc.,* 921 S.W.2d 835 (Tex.App.-Houston [14th Dist.] 1996, writ denied), in which this court applied the joint employer doctrine to a staff leasing relationship. Administaff, a staff leasing company, assigned Brown to work for Aztec, its client company. *Id.* at 838. The relationship between Administaff and Aztec was governed by a series of agreements that required Administaff to provide workers' compensation coverage for work-

---

**6.** Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong. *See Baptist Mem'l Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 947 (Tex.1998).

ers it leased to Aztec. *Id.* The agreements also specifically stated that Administaff and Aztec will be considered "co-employers (dual or joint employers)" of the leased workers for purposes of "employer liability under workers' compensation laws." *Id.* Further, Brown signed employment agreements in which he acknowledged that he was an employee of both Administaff and Aztec for purposes of workers' compensation coverage and in which he agreed that, in the event of injury, his sole remedy was benefits under Administaff's workers' compensation policy. *Id.* Brown was injured while performing work for Aztec and asserted negligence claims against both Administaff and Aztec. *Id.* at 837–38.

We held that Administaff and Aztec were Brown's co-employers and both were immune from suit under the exclusive remedy provisions of the workers' compensation laws. *Id.* at 847. We cited section 226 and several cases that have purportedly acknowledged the joint employer doctrine in the workers' compensation context. *See id.* at 843–44 (citing *Insurors Indem. & Ins. Co. v. Pridgen,* 148 Tex. 219, 223 S.W.2d 217, 218 (1949)[7]; *Thate v. Tex. & Pac. Ry. Co.,* 595 S.W.2d 591, 595–96 n. 1

(Tex.Civ.App.-Dallas 1980, writ dism'd)[8]; *Assoc. Indem. Co. v. Hartford Accident & Indem. Co.,* 524 S.W.2d 373, 375 (Tex.Civ. App.-Dallas 1975, no writ)[9]; *Gen. Accident Fire & Life Assurance Corp. v. Callaway,* 429 S.W.2d 548, 549–51 (Tex.Civ.App.- Houston [1st Dist.] 1968, no writ)[10]). We noted that while these courts did not reject application of section 226 or the joint employer doctrine, they did not specifically adopt it. *Id.* at 844. We also cited *Liberty Eylau* as recognizing the joint employer doctrine in Texas. *Id.* However, we applied the joint employer doctrine based on the specific facts of the case-all the parties contractually agreed Aztec and Administaff were Brown's co-employers. *Id.* at 847. We concluded that there was "no reason to disregard the co-employer relationship where the parties expressly contemplated such a relationship." *Id.*

We also noted in *Brown* that the Texas Legislature expressly recognizes co-employer status for purposes of workers' compensation in staff leasing services. *Id.* at 846–47. The Staff Leasing Services Act ("SLSA") governs staff leasing services. *See* TEX. LAB.CODE ANN. § 91.001–91.063 (Vernon 1996 and Supp.2003). Under the

7. In *Pridgen,* a dispute arose over which of three workers' compensation carriers must pay benefits to the widow of a worker killed while working on a dragline at a shipyard. The widow claimed the deceased was an employee of the shipyard, the dragline operator, and another company that arranged for the dragline operator to provide the dragline to the shipyard. 223 S.W.2d at 218–19. Although the court suggested the possibility of a co-employer relationship, it decided one did not exist. *Id.* at 219–22.

8. In *Thate,* an injured worker who recovered workers' compensation benefits from his employer's carrier also sought FELA benefits from a railroad. 595 S.W.2d at 594–95. The court noted that parties in similar suits have raised the argument that joint employment exists and recovery may be had in some forms from both employers; however, neither party

to this case raised joint employment, so the court did not consider it. *Id.* at 596 n. 1.

9. In *Assoc. Indem. Co.,* the workers' compensation carrier for a temporary employment company sought reimbursement for benefits paid to an employee injured while working for the employment company's customer. 524 S.W.2d at 375–76. Although one party argued the joint employer doctrine applied, the court did not need to accept or reject the doctrine under the facts of the case. *Id.* at 375–76.

10. In *Callaway,* the court, without discussing the joint employer theory, upheld a jury finding that a workers' compensation claimant was injured in the course and scope of his employment for two employers. 429 S.W.2d at 549–51.

SLSA, a staff leasing company may elect to obtain workers' compensation coverage for its employees. *See* TEX. LAB.CODE ANN. § 91.042(a) (Vernon 1996). The staff leasing company and its client company are "co-employers" for workers' compensation purposes. *See* TEX. LAB.CODE ANN. § 91.042(c) (Vernon 1996). If the staff leasing company elects to obtain workers' compensation coverage, then recovery of workers' compensation benefits is an injured employee's exclusive remedy, and he is barred from asserting a claim against either the staff leasing or the client company for injuries sustained during the course and scope of employment. *See* TEX. LAB. CODE ANN. §§ 91.042(c), 406.034, 408.001 (Vernon 1996). However, if the staff leasing company does not purchase workers' compensation coverage, an employee may pursue a common-law negligence cause of action against the leasing company and its client company, and they cannot assert traditional defenses. *See* TEX. LAB.CODE ANN. §§ 91.042(d), 406.004, 406.033 (Vernon 1996 & Supp.2003). Therefore, our *Brown* decision was based in part on the fact that SLSA mandates co-employer status in staff leasing services. *See Brown*, 921 S.W.2d at 846–47.[11] Accordingly, *Brown* does not support application of the joint employer doctrine when a purported employee pursues common-law claims against two or more non-subscribers who do not have a staff leasing relationship.[12]

In *Texas Workers' Comp. Ins. Fund v. Del Indus. Inc.*, 35 S.W.3d 591 (Tex.2000), the Texas Supreme Court confirmed co-employer status in staff leasing services governed by the SLSA. The Coronados suggest that the *Del* decision indicates the Texas Supreme Court, if given the opportunity, will generally recognize the joint employer doctrine. However, in *Del*, the court recognized co-employer status only as statutorily authorized in staff leasing services. *Id.* at 596. The court certainly did not adopt the joint employer doctrine when a purported employee pursues common-law claims against two or more non-subscribers who do not have a staff leasing relationship.

## C. FELA CASES

Finally, in support of their contention that the joint employer doctrine applies in this case, the Coronados rely on a line of federal cases decided under FELA, 45 U.S.C.A. §§ 51–60 (1986). *See Kelley v. S. Pac. Co.*, 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974); *Baker v. Tex. & Pac. Ry. Co.*, 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959); *Lindsey v. Louisville & Nashville R.R. Co.*, 775 F.2d 1322 (5th Cir.1985). Under FELA, a covered railroad is liable for negligently causing the injury or death of any person "while he is employed" by the railroad. 45 U.S.C.A. § 51; *Kelley*, 419 U.S. at 319, 95 S.Ct. 472. In each of these cases, the court addressed

---

**11.** The SLSA was not in effect when Brown was injured; however, we cited the fact that the SLSA now recognizes co-employer relationships in staff leasing services as one reason for our conclusion that Aztec and Administaff were Brown's co-employers. *Id.* at 847.

**12.** We recognize there has been some confusion among the courts as to the extent of our holding in *Brown*. Some courts have cited *Brown* as generally supporting the joint employer doctrine within a workers' compensation setting. *See, e.g., Garza v. Excel Logistics, Inc.,* —— S.W.3d ——, ——, 2002 WL 1041050

at *2 (Tex.App.-Houston [1st Dist.] May 23, 2002, no pet. h.); *Ingalls v. Standard Gypsum, L.L.C.,* 70 S.W.3d 252, 256 (Tex.App.-San Antonio 2001, pet. denied); *Richmond v. L.D. Brinkman & Co. (Tex.), Inc.,* 36 S.W.3d 903, 906 (Tex.App.-Dallas 2001, pet. denied); *Hoffman v. Trinity Indus., Inc.,* 979 S.W.2d 88, 90 (Tex.App.-Beaumont 1998, pet. dism'd by agr.). However, another court has limited *Brown* to its specific facts, namely the parties contractually agreed to be co-employers. *See Alvarado v. Wingfoot Enter.,* 53 S.W.3d 720, 725 (Tex.App.-Houston [1st Dist.] 2001, pet. granted).

whether a defendant railroad was an injured worker's employer under FELA even though the worker was carried on the employment rolls of another company. *See Kelley*, 419 U.S. at 319–20, 95 S.Ct. 472; *Baker*, 359 U.S. 227–28, 79 S.Ct. 664, 3 L.Ed.2d 756; *Lindsey*, 775 F.2d at 1323–24. The Coronados cite these cases as authority that evidence of overlapping supervisory authority between Schoenmann and FTI is probative evidence of a concurrent right of control over Cenobio's work. The Coronados assert they do not need to show that Schoenmann had full supervisory control over Cenobio's work, rather they need only show that Schoenmann's employees played "a significant supervisory role" with regard to his work. *See Lindsey*, 775 F.2d at 1324 (citing *Kelley*, 419 U.S. at 327, 95 S.Ct. 472) (stating "[t]he law does not require that the railroad have full supervisory control. It requires only that the railroad, through its employees, plays a 'significant supervisory role' as to the work of the injured employee").

▇▇▇ In *Kelley*, the court applied section 226 and stated that one may be an employee of a railroad under FELA while also employed by another.[13] *Kelley*, 419 U.S. at 324, 95 S.Ct. 472. The court ignored section 226's limiting language and

applied it to an employee asserting liability against two or more employers. We respectfully submit that the Supreme Court could have reached the same conclusion without expanding section 226 beyond the boundaries expressed by the American Law Institute. Moreover, FELA cases are distinguishable from this case because FELA allows recovery against a railroad employer even if the injured worker is nominally employed by another. *See Kelley*, 419 U.S. at 324, 95 S.Ct. 472; *Lindsey*, 775 F.2d at 1324. Nonetheless, even under FELA, the test is whether the railroad has control over the employee's work or the right to control the employee's work at the time of the injury.[14] While evidence of an overlap in supervisory ranks and a significant supervisory role may be factors to consider, the right to control *details* of the work which exposed an employee to the risk of injury remains the supreme test in Texas for determining one's status as an employee. *See Newspapers*, 380 S.W.2d at 590–92; *INA of Tex.*, 808 S.W.2d at 293.

## VI. JOINT EMPLOYER DOCTRINE NOT APPLICABLE WHEN PURPORTED EMPLOYEE PURSUES COMMON-LAW NEGLIGENCE CLAIM AGAINST TWO OR MORE NON-SUBSCRIBERS

Texas is unique in American jurisprudence because it is the only state that

13. The question of master-servant status under FELA is to be determined by reference to common-law principles. *Kelley*, 419 U.S. at 323, 95 S.Ct. 472; *Baker*, 359 U.S. at 228, 79 S.Ct. 664.

14. *See, e.g., Kelley*, 419 U.S. at 327, 95 S.Ct. 472 (finding that although railroad employees were occasionally in area where unloading operations were conducted and occasionally advised and consulted with trucking company's employees, railroad employees did not play significant supervisory role in unloading operations; and finding neither that injured employee was being supervised by railroad employees at time of accident nor that railroad employees had any *general right to con-*

*trol* activities of injured employee); *Baker*, 359 U.S. at 228–29, 79 S.Ct. 664 (finding evidence showing that employee's work was part of the maintenance task of railroad, railroad furnished material, and supervisor employed by railroad *exercised directive control over details of job* raised issue for jury's determination); *Lindsey*, 775 F.2d at 1324–25 (finding evidence that railroad representatives *directed contractor's employees* concerning which cars to unload, *gave specific orders and instructions* on occasion, inspected loading and positioning of trailers on the cars, and that contractor's employees consulted with railroad representatives on questions regarding their work supported jury's finding that injured employee was employee of railroad).

allows an employer to reject statutory workers' compensation insurance. *See Lawrence v. CDB Serv., Inc.,* 44 S.W.3d 544, 552 (Tex.2001); TEX. LAB.CODE ANN. § 406.002 (Vernon 1996). If an employer chooses not to subscribe, its employee must prove that his or her injuries were proximately caused by the employer's or a co-worker's negligence. TEX. LAB.CODE ANN. § 406.033(d). However, employers are discouraged from choosing non-subscriber status because they may not assert traditional common-law defenses available to defendants in a negligence cause of action including: (1) contributory or comparative negligence; (2) assumption of risk; and (3) negligence of a fellow employee. TEX. LAB.CODE ANN. § 406.033(a),(b); *Lawrence,* 44 S.W.3d at 551–52; *The Kroger Co. v. Keng,* 23 S.W.3d 347, 349–52 (Tex.2000). Accordingly, a non-subscriber employer bears a substantial risk because assignment of any negligence to the employer results in 100% liability. *See Kroger,* 23 S.W.3d at 351 (quoting David W. Robertson, *The Texas Employer's Liability In Tort For Injuries To An Employee Occurring In The Course Of The Employment,* 24 ST. MARY'S L.J. 1195, 1199–1201 (1993) ("The unavailability of the contributory negligence defense means that an employer whose fault, however slight, was a proximate cause of the injuries will owe full damages, notwithstanding any perception that the injured employee was also at fault in a way that was a proximate cause of the injuries.")).

■ The Coronados do not cite, and we have not found, a case in which a Texas court has applied section 226 and the joint employer doctrine when a purported employee pursues a common-law negligence claim against two or more non-subscribers. We decline to do so now because application of the joint employer doctrine in such cases is inequitable and problematic.

The Texas Legislature has enacted specific rules apportioning liability between joint tortfeasors according to each tortfeasor's assigned percentage of responsibility. TEX. CIV. PRAC. & REM.CODE ANN. §§ 33.013, 33.015 (Vernon 1997). The Legislature has also determined that a joint tortfeasor is not jointly and severally liable for causing a claimant's injury unless its share of liability is greater than fifty percent. TEX. CIV. PRAC. & REM.CODE ANN. § 33.013(b). As an exception, in cases involving environmental and toxic torts, a joint tortfeasor is jointly and severally liable if its share of responsibility is equal to or greater than fifteen percent. TEX. CIV. PRAC. & REM.CODE ANN. § 33.013(c). Further, the amount of damages awarded are reduced by the claimant's percentage of responsibility, if any. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(a) (Vernon 1997).

However, these rules do not apply to non-subscribers in an employee's negligence action because they are barred from asserting comparative responsibility. *See Kroger,* 23 S.W.3d at 349–52; *Ortiz v. Furr's Supermarkets,* 26 S.W.3d 646, 649–50 (Tex.App.-El Paso 2000, no pet.). For example, an injured worker sues A, B, and C, all non-subscribers, claiming they are all his employers because they had a general right of control. A jury assesses negligence against A, B, and C. Because comparative responsibility is unavailable to A, B, and C, the jury does not assign percentages of negligence to them. Therefore, courts would be compelled to fashion a common-law allocation in contravention of the statutory apportionment. The situation would be particularly inequitable if A were solvent, but B and C were insolvent. Because apportionment of liability would not apply, A could be 100% liable for violating a duty to the worker based on a general right of control even though it did not create or directly control the risk that gave rise to the injury. A's responsibility

for causing the injury might be minimal compared to B's and C's. Further, because a worker's comparative responsibility may not be submitted, under the Coronados' theory, A could be assigned 100% liability regardless of any perceived negligence on the part of the worker, even if it did not create the risk or control the details of the work resulting in accidental injury. Accordingly, we decline to adopt a general right of control test for imposing liability on multiple non-subscribers because allocation of liability is impractical and inequitable.

 Instead, the entity that creates and directly controls the circumstances giving rise to the risk of injury should bear the liability. Only the non-subscriber controlling the *details* of the work at the time of the injury should be subjected to 100% liability for any degree of negligence that causes injury to a worker. *See Newspapers*, 380 S.W.2d at 590–92; *INA of Tex.*, 808 S.W.2d at 293. Our holding is also consistent with the principle, long recognized by Texas courts, that "no man can serve two masters; for either he will hate the one and love the other; or else he will hold to the one, and despise the other." *See Tex. Refin. Co. v. Alexander*, 202 S.W. 131, 134–37 (Tex.Civ.App.-Amarillo 1918, no writ); *see also Hume v. Baggett & Baggett*, 221 S.W. 1002, 1003 (Tex.Civ. App.-San Antonio 1920, no writ).

## VII. THE BORROWED SERVANT DOCTRINE

 Texas courts have long recognized that a general employee of one employer may become the borrowed servant of another. *Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582, 583 (Tex.1977); *Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 225 (Tex.1963); *Gibson v. Grocers Supply Co., Inc.*, 866 S.W.2d 757, 760 (Tex.App.-Houston [14th Dist.] 1993, no writ). The critical consideration in determining whether a general employee has become a special employee or borrowed servant is which

employer had the right to control the manner and details of the employee's work at the time of the accident. *Sparger*, 547 S.W.2d at 583 (stating essential inquiry is whether alleged employer had the right to control employee in the details of the specific act raising the issue of liability); *Smith v. Otis Eng'g Corp.*, 670 S.W.2d 750, 751 (Tex.App.-Houston [1st Dist.] 1984, no writ) (stating employer is the entity with the right to control employee at the time of the accident). If the general employer controls the manner of the employee's performing services, he remains an employee of the general employer; however, if the employee is placed under another employer's control in the manner of performing services, the employee becomes the borrowed servant of that employer. *McKay*, 366 S.W.2d at 225.

 For liability purposes, where one entity "borrows" another's employee, workers' compensation law identifies one party as the "employer" and treats all others as third parties. *Smith*, 670 S.W.2d at 751 (stating that when one entity "borrows" another's employee, there may be some division of authority between the parties as to the right to control the employee's performance of the particular task; however, the law continues to require that one party be named the employer, and all others be classified as third parties outside the purview of the workers' compensation law); *see Archem Co. v. Austin Indus., Inc.*, 804 S.W.2d 268, 269 (Tex.App.-Houston [1st Dist.] 1991, no writ). Thus, in the workers' compensation context, the borrowed servant doctrine protects the employer who had the right of control at the time of the accident from common-law liability. *Williams v. APS, Inc.*, 969 S.W.2d 433, 435 (Tex.App.-Houston [14th Dist.] 1997, no pet.); *Carr v. Carroll Co.*, 646 S.W.2d 561, 563 (Tex. App.-Dallas 1982, writ ref'd n.r.e.).

To achieve consistency and predictability in the law, the borrowed servant doctrine should be applied to both subscribers and non-subscribers. *See Sparger*, 547 S.W.2d at 584 (stating the principle of borrowed servant "cuts across the entire law of principle and agent and employer and employee"); *Ortiz*, 26 S.W.3d at 652 (applying the borrowed servant doctrine to non-subscribers).[15] The borrowed servant doctrine can be fairly applied across the board due to the potential mixture of subscribers and non-subscribers present at any worksite. For example, if a non-subscriber loans an employee to a subscriber, both should have the benefit of the borrowed servant doctrine, which would render the subscriber the employer and the non-subscriber a third party. *See Smith*, 670 S.W.2d at 751. Therefore, the subscriber would be immune from suit under the workers' compensation laws as the employer. *See Williams*, 969 S.W.2d at 435; *Carr*, 646 S.W.2d at 563. Further, the non-subscriber, as a third party, would be allowed to assert common-law and statutory defenses if sued for negligence. However, if the non-subscriber were also classified as an employer based on a general right of control, it would be deprived of common-law and statutory defenses and would be 100% liable to the worker despite its lack of control over the details of the work that resulted in injury. *See* Tex. Lab.Code Ann.

§ 406.033(a),(b); *Lawrence*, 44 S.W.3d at 551–52; *Kroger*, 23 S.W.3d at 349–52. This result would be contrary to the principle that the entity that creates and directly controls the circumstances giving rise to the risk of injury should bear liability as an employer. In an opposite scenario, if a non-subscriber borrows an employee, it would be classified as the employer and, therefore, lose common-law defenses in an employee's negligence suit.

 Consistent with the borrowed servant doctrine, we hold that the non-subscriber controlling the details of an employee's work at the time of injury should be the only entity bearing the nondelegable duty to provide a safe place to work. *See McKay*, 366 S.W.2d at 225; *Smith*, 670 S.W.2d at 751. As the court recognized many years ago in *Alexander:*

> Very high authority has said, in effect, "No man can serve two masters." This principle is fundamental in the law of master and servant. There cannot be more than one responsible superior for the same subordinate at the same time and in the same transaction. When it is conceded one is the servant of one of two or more persons, it is sometimes difficult to tell who is the master. In modern industry the line of cleavage is often difficult of ascertainment. Before one is the master he must have the right

---

15. In *Ortiz*, the plaintiff was assigned by S & M Cleaning to clean floors at Furr's, where he was assaulted by two of Furr's employees. 26 S.W.3d at 649–50. A jury found that the plaintiff was Furr's borrowed servant, and Furr's was negligent as a non-subscriber under the workers' compensation act. *Id.* at 650. The jury also assigned fifty percent comparative negligence to S & M, and the trial court reduced the award against Furr's accordingly. *Id.* On appeal, the plaintiff argued that the trial court impermissibly reduced the award because it was based on non-subscriber negligence. *Id.* at 655. The court held that there was no evidence that the plaintiff was Furr's borrowed servant because there was no evidence that he was acting at Furr's direction or under its control at the time of the injury. *Id.* at 652. Therefore, because Furr's was not the plaintiff's employer at the time of the injury, it could not be liable for failing to provide a safe place to work and did not lose the benefit of S & M's proportionate responsibility. *Id.* at 655. Instead, the award against Furr's was reduced by S & M's proportionate responsibility on the alternate theory that Furr's was negligent for failing to supervise the employees who assaulted the plaintiff. *Id.* at 652 n. 3.

and power to control the servant in the particular work in hand, however temporary may be that right and power.

*Alexander*, 202 S.W. at 134.[16]

 Accordingly, we reject application of section 226 and the joint employer doctrine when a purported employee pursues a common-law negligence claim against two or more non-subscribers unless joint employment is authorized by statute[17] or the subject of a contract.[18]

## VIII. RIGHT TO CONTROL DETAILS OF CENOBIO'S WORK AT THE TIME OF HIS INJURY

 The pivotal issue is whether Schoenmann, and not FTI, had the right to control the details of Cenobio's work at the time of his accident.[19] The Coronados claim overlap in the supervisory ranks establishing Schoenmann's right to control Cenobio's work at the time of the accident is demonstrated by Gerald Farrell's dual role as vice president of FTI and general manager of both Schoenmann and FTI. Farrell had the right to control FTI employees as long as he went through the employee's supervisor. Lee Odale, FTI's maintenance supervisor, was Cenobio's direct supervisor. Odale's immediate supervisor was Farrell. Odale testified that when he had questions, he asked Farrell. The Coronados argue a reasonable inference exists that, as Odale's supervisor, Farrell provided supervisory instruction regarding Cenobio's repair of the cull tank. The *undisputed* evidence establishes that no one instructed Odale to replace the damaged belt on the cull tank. Instead, he noticed the damaged belt and instructed Cenobio to replace it. *See Gonzales v. Hearst Corp.*, 930 S.W.2d 275, 279 (Tex. App.-Houston [14th Dist.] 1996, no writ) (accepting only the *undisputed facts* or appellant's version of disputed facts, avoiding all evaluations of credibility, and crediting all permissible inferences to appellant

---

**16.** Section 226 of the Restatement of Agency was adopted after *Alexander*. Because section 226 specifically provides that one may have two masters, we do not imply that the principle "no man can serve two masters" is applicable when a third party attempts to impose vicarious liability on both masters. The *Alexander* court addressed employer liability to an employee, and we apply the principle "no man can serve two masters," cited therein, only to employee versus employer liability.

**17.** *See, e.g.,* FELA, 45 U.S.C.A. §§ 51–60; *Kelley,* 419 U.S. at 324, 95 S.Ct. 472; SLSA, TEX. LAB.CODE ANN. §§ 91.001–91.063.

**18.** Two or more subscribers may contractually agree to be joint employers. However, we do not address that situation because there is no such agreement in this case. We limit our ruling to situations in which an injured worker alleges two or more nonsubscribers are his joint employers in order to impose the nondelegable duties of an employer on both.

**19.** Schoenmann asserts that the Coronados are collaterally estopped from claiming that Schoenmann was Cenobio's employer at the time of the injury because a United States District Court has previously ruled that his injury occurred while in the course and scope of his employment for FTI. A party seeking to assert collateral estoppel must establish that: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Sysco Food Serv., Inc. v. Trapnell,* 890 S.W.2d 796, 801 (Tex.1994). Because we hold there can be no joint employment in this case, collateral estoppel based on the federal court ruling would preclude the Coronados from claiming Schoenmann was Cenobio's employer. Further, the Coronados state in their brief that FTI was Cenobio's employer. However, we will proceed with analysis of the evidence because, even without applying the collateral estoppel doctrine, the Coronados failed to present any evidence of probative value sufficient to raise a fact issue that Schoenmann had the right to control the details of Cenobio's work at the time of the accident.

in review of directed verdict). Even without considering Odale's undisputed testimony, we find that while the Coronados presented evidence that Farrell was involved in some aspects of the management of Schoenmann, there is no evidence that Farrell was directly involved in replacement of the belt on the cull tank or that he otherwise instructed Odale or Cenobio on its replacement.

Anthony Colunga, as FTI's plant manager, controlled Cenobio's work on occasion. The Coronados refer to testimony that Colunga went to Farrell for instruction and guidance. Based on this testimony, the Coronados contend a reasonable inference exists that Farrell instructed Colunga regarding repair of the cull tank. Colunga, in turn, supervised Cenobio when Odale told Cenobio to ask Colunga for additional personnel to assist replacing the belt. The Coronados, however, have taken this isolated testimony out of context. Colunga continued to explain that he went to Pat Goolsby, president of FTI, if he had a question concerning the operation of the line and only went to Farrell regarding personnel issues. In any event, we cannot conclude from this evidence that Farrell provided any instruction to Colunga regarding replacement of the belt on the cull tank.

The Coronados contend Schoenmann's right of control is further shown by Mark Steakley's service as vice president, general counsel, and chief financial officer of Schoenmann, as well as officer in charge of safety for FTI. The Coronados argue that Steakley witnessed the accident; therefore, it can be reasonably inferred that he was, in his role as an employee of Schoenmann, directly overseeing Cenobio's replacement of the belt on the cull tank.[20] Steakley's testimony on this point was equivocal, and we cannot draw a reasonable inference from his mere view of the accident, if indeed he saw it happen, that he was exercising the right to control details of Cenobio's work. Other than evidence of his overlapping duties between Schoenmann and FTI, there is no evidence that Steakley was exercising control over the details of Cenobio's work at the time of the accident. The Coronados further assert that it was Steakley's responsibility to investigate the accident. Any actions taken after the accident, however, are not relevant to determining control at the time of the injury. See Archem Co., 804 S.W.2d at 270; Denison v. Haeber Roofing Co., 767 S.W.2d 862, 866 (Tex.App.-Corpus Christi 1989, no writ). Therefore Steakley's post-accident actions, as well as other evidence of Schoenmann's actions after the accident, are irrelevant to the issue of right of control at the time of Cenobio's injury. We must consider the facts and circumstances as they existed at the time of the injury. Anchor Cas. Co. v. Hartsfield, 390 S.W.2d at 469, 471 (Texas 1965); Goodnight v. Zurich Ins. Co., 416 S.W.2d 626, 630 (Tex.Civ.App.-Dallas 1967, writ ref'd n.r.e.).

The Coronados point to additional evidence of overlap of supervisory personnel. For example, when Cenobio applied for a job, he went through Schoenmann's personnel office. The record indicates Schoenmann hired workers for both Schoenmann and FTI. Although Cenobio's job application is on an FTI letterhead, it was approved by both Farrell, general manager of Schoenmann and FTI, and Colunga, plant manager for FTI. In addition, Cenobio was issued a safety manual showing Schoenmann's and FTI's names on the cover. Finally, the Coronados argue that despite Schoenmann's evidence

---

**20.** Without providing any supporting citation to the record, the Coronados contend Steakley personally observed Cenobio and Flores begin repair efforts on the cull tank. In our review of the record, we found no evidence to support this assertion.

that it did not use the cull tank, it nonetheless would have benefitted from Cenobio's replacing the belt because of the interdependence of the two businesses. At most, the Coronados presented some evidence of overlapping supervisory duties and joint administrative functions between Schoenmann and FTI. Such evidence, however, is not sufficient to raise a fact issue whether Schoenmann exercised control over the details of Cenobio's work (replacement of the belt on the cull tank) at the time he was injured.

### IX. CONCLUSION

The Coronados elected to pursue Schoenmann solely under the theory that Schoenmann was Cenobio's joint employer at the time of his injury. However, under our analysis and application of Texas law, evidence of a general right of control is not sufficient to impose liability on multiple employers for breach of the nondelegable duty to provide a safe place to work. The Coronados could have pursued third party claims against multiple persons or entities having a general right of control over the work environment; however, a cause of action for breach of duties owed by employers to employees may be asserted only against the entity that had the right to control *details* of Cenobio's work at the time of injury.

We find the Coronados failed to present any evidence of probative value sufficient to raise a fact issue that Schoenmann had the right to control the details of Cenobio's work (replacement of the belt on the cull tank) at the time of the accident. Therefore, the trial court properly granted a directed verdict in favor of Schoenmann. All of the Coronados' issues are overruled. Accordingly, we affirm the judgment of the trial court.