Affirmed as Modified and Memorandum Opinion filed April 20, 2004









Affirmed as Modified and Memorandum Opinion filed
April 20, 2004.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00639-CV

____________

 

DONALD BISHOP, Appellant

 

V.

 

NABISCO, INC. and
KRAFT FOODS NORTH AMERICA, INC., Appellees

 



 

On Appeal from the 133rd
District Court

Harris County, Texas

Trial Court Cause No. 01-59734

 



 

M E M O R A N D U M   O P I N I O N








Appellant, Donald Bishop (ABishop@) appeals a take
nothing judgment rendered against him in his personal injury suit.  He sued Nabsico, Inc. and Kraft Foods
America, Inc. (ANabisco@)[1]
after falling through a covered hole while working at a Nabisco bakery.  Specifically, he alleged that Nabisco was in Acontrol of the premises, and
inspection and maintenance of the covers for the holes that made the basis of
[his] lawsuit.@ 
Nabisco
alleged in its answer that Bishop was comparatively negligent in causing his
injuries, and Bishop=s claims were barred by the borrowed
servant doctrine and Texas=s workers= compensation
laws.  We affirm the take nothing
judgment; however, we modify the judgment to reflect the analysis set out
below.

Bishop presents two points of error for
review: (1) the evidence was legally and factually insufficient to support the
jury=s finding that
Bishop was a borrowed servant at the time of his injury, and (2) the jury=s findings on past
damages, pain and suffering, mental anguish, and physical impairment were
inadequate and manifestly unjust in light of the uncontroverted evidence.  Nabisco filed a cross appeal arguing that
there was no evidence to support the jury=s finding of
negligence on the part of Nabisco.[2]  Nabisco asks us to enter a take nothing
judgment on this basis.

Bishop was an employee of Midwest
Mechanical (AMidwest@).  Nabisco employed Midwest, an independent
contractor, to assist Nabisco during the dismantling of its bakery.  Midwest employees began working in December
1999.  There was no written contract
between Nabisco and Midwest. Rather, Midwest billed time and materials and was
paid through purchase orders.  Midwest
supplied up to fourteen workers who were divided into two crews and supervised
by two foremen, Robert Matthieu and Pete Combs, and one general foreman, Donny
Knight.   Midwest did not employ a safety
man; however, Nabisco did have a safety man onsite at all relevant times.  








James Hilton, Nabisco=s plant
engineering manager, directed the dismantling of the bakery.  Hilton made decisions with regard to project
staffing.  He advised Midwest on the type
of and number of workers that were required. 
Hilton dealt directly with Donny Knight, Midwest=s general foreman,
in matters related to the project. 
Midwest was specifically assigned to the Amixing mod@ area and was
directed to remove the mixing equipment. 
On a weekly basis, Hilton would tell Knight which equipment to take out
and where he wanted it shipped.  Although
he did not give specific instructions on how to remove each piece of equipment,
Hilton would advise Midwest on the order the equipment was to be removed and
the equipment=s weight. 
Hilton received progress reports from Midwest.  

When the equipment was removed, large
holes, open to lower levels, remained. After receiving complaints from other
Nabisco employees, Hilton directed Donny Knight 
to cover the holes.  Midwest
constructed wooden covers with materials provided by Nabisco.  On February 25, 2000, Bishop fell through a
hole while standing on one of these covers.  
After Bishop=s fall, Hilton directed that new covers be
constructed and placed over the holes. 
An accident investigation revealed that the cover had been weakened
after being struck by a skid loaded with the removed equipment.  

In response to four questions, the jury
found: (1) both Nabisco and Bishop proximately caused the incident, (2) both
Nabisco and Bishop were 50% responsible for contributing to Bishop=s injuries, (3)
Bishop was a borrowed employee of Nabisco at the time of the incident, and (4)
reasonable compensation for Bishop=s past injuries
is  $340,000 and $60,000 for injuries
that have a reasonable probability of being sustained in the future.  Additionally, it was stipulated by both
parties that Bishop made a workers= compensation
claim and received benefits for his injuries. Following the exclusive remedy
provision found in section 408.001 of the Texas Labor Code, the court entered a
take nothing judgment in favor of Nabisco.








When both legal and factual sufficiency challenges are raised
on appeal, the court must first examine the legal sufficiency of the
evidence.  See Glover v. Texas Gen.
Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981) (per curiam).  In reviewing a challenge to the legal
sufficiency of the evidence, an appellate court considers only the evidence and
inferences tending to support the trial court's findings and disregards all
evidence and inferences to the contrary. 
See Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex. 1992).  Thus, we must examine the record to see
whether some evidence exists to support the fact in issue, namely, whether
Bishop was a borrowed servant. See id. 
In reviewing the factual sufficiency of the evidence, we must consider
and weigh all the evidence and should set aside the judgment only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986) (per curiam). 

Texas law holds that an employee of a general employer may be
considered an borrowed servant of another with respect to some activities.  Wingfoot Enters. v. Alvardo, 111 S.W.3d 134, 146 (Tex. 2003); Sparger v.
Worley Hosp. Inc., 547 S.W.2d 582, 583 (Tex. 1977); Coronado v.
Schoemann Produce Co., 99 S.W.3d 741, 753 (Tex. App.CHouston [14th Dist.] 2003, no
pet.).  A borrowed servant relationship
arises when the employer has Athe right to direct and control the employee with respect to
the details of the particular work at issue.@ St. Joseph Hosp. v. Wolff, 94
S.W.3d 513, 537 (Tex. 2003) (plurality opinion); Sparger, 547 S.W.2d at
583.  Ordinarily, the contract between
the two employers establishes which employer has the right of control.  Producers Chem. Co. v. McKay, 366
S.W.2d 220, 226 (Tex. 1963).  However, in
the absence of a contract, the right to control is Adetermined as an inference from such
facts and circumstances as the nature of the general project, the nature of the
work to be performed by the machinery and employees furnished, length of the
special employment, the type of machinery furnished, acts representing an
exercise of actual control, the right to substitute another operator of a machine,
etc.@ 
Id.  

In
making his insufficiency argument, Bishop asserts that the only evidence that
Nabisco can rely upon is the testimony of his expert, Ronald Sokol.  Without citing any authority, Bishop argues
on appeal that Sokol=s statements are not evidence, but are merely opinions.  Sokol testified as plaintiff=s expert on issues of safety.  In preparing for trial, Sokol reviewed
depositions, photographs, and an expert=s report.  When questioned by Nabisco, he stated:

I
believe they were controlling the detail of the work.  They were B they were saying what was to be
removed and they were telling them B setting schedules for them.  They were setting requirements on packing, on
shipping.  They were telling them B when the holes were open, Midwest
went to Nabisco and said: What do you want us to do?   And they came back and covered it.  So, I thought that they were controlling that
aspect as well.








Nabisco=s counsel sought clarification of
Sokol=s answer.  AIt=s your opinion, as an expert witness
retained by [Bishop], that Nabisco had the right to control the means, manner
and detail of the work performed by Midwest and that crew?@ 
Sokol responded, AI believe they were controlling it.  I mean, you=re saying the right to, I don=t understand what you=re getting at there, but in my
opinion the actions of the things that I just named I believe it shows that
there was controlling going on there.@ Bishop did not object during this
line of questioning.

Other than Bishop=s naked assertion that this testimony
is no evidence, we have no other basis for disregarding it.  Accordingly, we are inclined to find that
this issue is waived by appellant=s failure to cite any authority
supporting his position.  See Tex. R. App. P. 38.1(h) (requiring a
brief to Acontain a clear and concise argument
for the contentions made, with appropriate citations to authorities@); Nguyen v. Kosnoski, 93 S.W.3d 186, 188 (Tex. App.CHouston [14th Dist.] 2002, no pet.) (AAn issue not supported by authority
is waived@) (citations omitted)).  However, even if we were to conclude that
there was insufficient evidence to support the jury=s borrowed servant finding, we must
affirm the take nothing judgment on the basis presented in Nabisco=s cross appeal. 

Bishop=s claims are
governed by chapter 95 of the Civil Practices and Remedies Code as he alleges a
failure to provide a safe workplace.  Chapter 95 requires that the
plaintiff (1) prove the property owner exercised control over the manner in
which the independent contractor=s employees carried out their work and
(2) prove that Athe property owner had actual knowledge of the danger
or condition resulting in the personal injury . . . and failed to adequately
warn.@ 
Tex. Civ. Prac. & Rem. Code
Ann. ' 95.003 (Vernon 1997) (emphasis
added).  Nabisco challenges the
sufficiency of the evidence supporting the jury=s finding that Nabisco=s negligence contributed to Bishop=s injuries.  








We agree with Nabisco that there was no evidence to support
the jury=s finding that Nabisco=s negligence contributed to Bishop=s injuries.  Chapter 95 requires that the plaintiff have actual
knowledge of a dangerous condition.  Tex. Civ. Prac. & Rem. Code Ann. ' 95.003(2) (Vernon 1997).  Midwest constructed the covers without any
instructions as to how to build them. 
Nabisco cites the testimony of Ronald Sokol, Bishop=s expert, who explained that the
danger of falling would arise only if the cover had been damaged or
dislodged.  Every Nabisco employee who
testified at trial indicated that they had no knowledge that the cover had been
damaged.   In refuting Nabisco=s insufficiency claims, Bishops
directs us to testimony by Nabisco=s employees who acknowledged that it
was potentially harmful to have large equipment working next to these covers;
however, we reiterate that there is no evidence that Nabisco actually knew that
the covers had been damaged.  Bishop even
testified that he did not know that it had been weakened.   Actual knowledge that the cover was
dangerous is different than knowing that the cover was potentially
dangerous.  See Kelly v. Lin
Television of Texas, L.P., 27 S.W.3d 564, 572 (Tex. App.CEastland 2000, pet. denied)
(declining to equate a negligent failure to inspect with actual knowledge of
dangerousness); see also Fisher v. Lee & Chang P=ship, 16 S.W.3d 198, 202 (Tex. App.CHouston [1st Dist.] 2000, pet.
denied) (explaining that because land owner had no knowledge of defective
ladder there was no duty to warn). 

Finding no evidence that Nabisco knew the covers were
dangerous, we affirm the take nothing judgment and modify the trial court=s judgment.  Instead of the Labor Code=s exclusive remedy provision, the
take nothing judgment, as modified, rests upon Bishop=s failure to meet his burden under
chapter 95 of the Civil Practices and Remedies Code.  Accordingly, we need not reach appellants
second point of error regarding the jury=s damage finding.

 

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed April 20, 2004.

Panel consists of
Justices Yates, Anderson, and Hudson.











[1]  Nabisco was
subsequently acquired by Kraft Foods North America, Inc.  





[2]  This ground
was first raised in Nabisco=s motion for JNOV, which was expressly denied by the
trial court in its final judgment.