Opinion issued April 1, 2025



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00678-CV

———————————

**HOUSTON FIRST CORPORATION, Appellant**

**V.**

**JESSE VALMA, Appellee**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2024-03178**

---

## MEMORANDUM OPINION

Appellee Jesse Valma sued three entities including Appellant Houston First Corporation in connection with injuries he allegedly sustained while engaging in stagehand work at the Jesse H. Jones Hall for the Performing Arts, an entertainment venue in Houston, Texas. Houston First Corporation ("HFC"), a

municipal entity that operates Jones Hall, filed a Plea to the Jurisdiction based on governmental immunity, which the trial court denied.

In this interlocutory appeal, HFC argues the trial court erred in denying its Plea to the Jurisdiction because (1) Valma did not plead or prove he gave timely notice to HFC of his claims and thus HFC's immunity from suit was not waived, and (2) HFC is immune as to Valma's claims because his pleadings negate his premises liability claims against HFC and, alternatively, he failed to allege a waiver of immunity.

Because Valma did not provide written notice of his claims to HFC or establish that HFC had actual knowledge of his claims, HFC's immunity from suit was not waived. We reverse and render.

**Background**

On June 14, 2022, Valma was employed by Houston Production Services, Inc., also known as IATSE[1] Local Union 51, as a stagehand doing work backstage at Jesse H. Jones Hall for the Performing Arts in Houston, Texas. Valma "was tasked with taking down various size and lengths of vertically stored pipes from two storage areas" backstage in preparation for renovation work to be conducted by the Foundation for Jones Hall. After completing the project at the first storage area, Valma moved to the second storage area, which "had a bright light aimed

---

[1]    IATSE is the International Alliance of Theatrical Stage Employees.

directly where [Valma] was required to stand in order to perform his work." The light made it "very difficult" for Valma to see the entirety of the vertical pipes. As he began to remove the pipes, several of them "tumbled down, crushing [Valma] and causing severe injuries." According to Valma, he could not avoid being struck because he was "blinded by the light over the pipes" and he did not have a "safe means of egress to avoid the falling pipes" because materials had been left behind in the work area by the defendants.

Valma sued HFC, the Foundation for Jones Hall, and Forney Construction, LLC for negligence. According to Valma, HFC is the municipal corporation that operates Jones Hall, the Foundation for Jones Hall is a domestic nonprofit corporation responsible for Jones Hall's backstage operations,[2] and Forney Construction, LLC was responsible for construction site management at Jones Hall when the incident occurred.[3] In his petition, Valma alleged the defendants globally failed to (1) ensure safe lighting, (2) ensure a safe work environment, (3) properly hire, train, and supervise their employees, (4) have proper safety equipment at the jobsite, (5) provide safe means of ingress and egress, (6) warn of a hazardous condition on the premises, and (7) properly store materials at the jobsite.[4] Valma

---

[2] According to HFC, the Foundation for Jones Hall was responsible for "backstage operations and maintenance" at Jones Hall.

[3] HFC is the only defendant involved in this appeal.

[4] Valma's original petition does not identify any particular act by any particular defendant.

also alleged the defendants created a hazardous condition on the premises and violated applicable OSHA[5] and state standards. Valma did not plead a waiver of governmental immunity as to HFC in his original petition.

HFC filed an answer and a first amended original answer,[6] the latter of which comprised a general denial, special exceptions, and several affirmative defenses, including immunity under the Texas Tort Claims Act ("TTCA").[7] HFC also filed a Plea to the Jurisdiction.

## Plea to the Jurisdiction

In its Plea to the Jurisdiction, HFC asserted it is a local government corporation created under the Texas Transportation Code to "operate and maintain the City's convention and performing arts facilities and other real estate[.]" *See* TEX. TRANSP. CODE § 431.101(a) (authorizing creation of local government corporation "to aid and act on behalf of one or more local governments to accomplish any governmental purpose of those local governments"). The Transportation Code identifies local government corporations as governmental units as that term is contemplated by the TTCA. *See* TEX. TRANSP. CODE § 431.108(a) ("A local government corporation is a governmental unit as that term

---

[5]  OSHA is the Occupational Safety and Health Administration.

[6]  Because the other defendants are not involved in this appeal, we do not address their pleadings.

[7]  *See* TEX. CIV. PRAC. & REM. CODE § 101.001, *et. seq.*

4

is used in Chapter 101, Civil Practice and Remedies Code."); TEX. CIV. PRAC. & REM. CODE §101.001, *et seq.* HFC thus argued it is entitled to governmental immunity from suit unless immunity is waived.

HFC argued it was immune from suit and the trial court lacked jurisdiction over HFC because Valma had not provided HFC with the required statutory notice of his claims within six months of the incident as required by the TTCA. Indeed, HFC argued, Valma never provided formal notice to HFC of his injuries. Nor, HFC argued, did HFC have actual notice of Valma's claims, because "[m]ere knowledge that an incident has occurred" or "[m]erely investigating an incident does not give a governmental unit the notice required by [the] TTCA nor does the mere presence of a governmental unit's employee on the scene."

Although HFC acknowledged that an administrator for IATSE had investigated the incident and completed a report on the same day ("IATSE Report"), HFC argued the IATSE Report was intended to enable Valma's employer "to take corrective actions to prevent future incidents" and was used to generate a worker's compensation claim report ("Claim Report"). HFC argued neither the IATSE Report nor the Claim Report established HFC had actual notice of Valma's claims because neither report connected any of HFC's conduct to Valma's injury and neither identified any unreasonable hazard or condition. Nor was there evidence that either report had been provided to HFC. Thus, HFC

argued, "HFC was unaware of any injury, any claim, the parties involved, or any alleged fault producing or contributing to the injury" until Valma sued HFC. HFC also argued that, based on Valma's allegations that HFC knew or should have known the work environment was not safe, Valma's claim was a "premise defect" claim rather than a general negligence claim. Finally, HFC argued that the TTCA waives governmental liability only in limited circumstances not applicable because there is no evidence an HFC employee was involved in the incident.

Section 101.021 of the Civil Practice and Remedies Code, which addresses the TTCA's imposition of liability on a government entity, provides:

A governmental unit in the state is liable for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE §101.021. HFC argued that because there was no evidence that an HFC employee was involved in the incident that caused Valma's

alleged injuries, HFC was immune from suit under the TTCA. Attached to HFC's Plea to the Jurisdiction were an investigation report prepared by an administrator for Valma's employer and a worker's compensation claim report.

In his response to the Plea to the Jurisdiction, Valma argued HFC had actual notice of Valma's claims and injuries negating the TTCA's requirement that HFC receive formal written notice. The TTCA's notice requirements provide:

(a)    A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:

(1)    the damage or injury claimed;

(2)    the time and place of the incident; and

(3)    the incident.

. . .

(c)    The notice requirements . . . do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

TEX. CIV. PRAC. & REM. CODE §101.101. Valma argued actual notice under the TTCA requires "knowledge of injury, the governmental units' alleged fault producing or contributing to the injury, and the identity of the parties involved" and he argued that if the governmental unit "received the same information it

7

would have received with formal notice, then it is determined to have actual notice."

In support of its response, Valma attached HFC's discovery responses and the IATSE Report, which purportedly was incorporated into an OSHA report.[8] Valma also attached HFC's security report, produced by HFC during discovery, which "described the incident and [Valma's] injuries" and was dated June 14, 2022 ("HFC Security Report"). In HFC's interrogatory answers, HFC stated it "became aware of the incident on or about June 14, 2022," the day it occurred, and that its facilities' superintendent, Kerry Warner, was "working at Jones Hall" on June 14, 2022 and "witnessed [Valma's] injury." And the IATSE Report stated:

> The facility the incident occurred in is now undergoing renovation
> . . . . The managing company at this facility has assured us that the
> lighting location and positioning will be addressed during this
> remodeling. The facility also assured us that a second chain/guard
> restraint will be added during this renovation. It will be painted safety
> yellow. . . .[9]

---

[8]   The OSHA report is not in the record but a page from the OSHA case file diary and an attached IATSE Report, which is titled a "non-mandatory investigative tool," are in the record. This same IATSE Report was attached to HFC's Plea to the Jurisdiction.

[9]   The IATSE Report identified a second factor in addition to the bright light as a cause of the accident:

> The second underlying factor was the chain/guard used to secure
> those vertical pipes in place was undone for the entire pipe storage
> removal. Mr. Valma climbed a ladder and disconnected the
> chain/guard from the racks. . . . A better engineering design will
> have at least one more chain/guard higher up and all painted a bright
> safety yellow color making it easy to identify the safety measure is
> in place immediately.

8

> Houston Production Services is preparing a written procedure on the proper and acceptable method and process on removing and storing vertical pipes in all our work locations. This written procedure will be attached or adjacent to each vertical pipe storage location on all locations where this type of storage occurs.

(Footnote added.) Valma argued that given the investigations by HFC and IATSE, HFC was "aware of its alleged fault in contributing to the injury." And in any event, Valma argued, a fact issue precluded the granting of HFC's Plea to the Jurisdiction.

In its reply, HFC argued that because Valma had conceded it had not given HFC formal written notice of the accident and Valma had not affirmatively plead a waiver of governmental immunity in his petition, the trial court lacked subject matter jurisdiction over HFC. HFC argued that knowledge an injury has occurred, by itself, is insufficient to put a government entity on notice of a TTCA claim. HFC argued it had not obtained "actual notice" of Valma's claims from the IATSE Report or the HFC Security Report because neither report referred to HFC or "describe[d] facts or allegations connecting conduct of HFC to causation or an injury asserted by [Valma]." HFC further argued that even if one of its employes had been present "somewhere" in Jones Hall on the date of the incident, the employee's presence was inconsequential because her presence alone did not impute actual notice of Valma's claims to HFC, and there also was no evidence she

9

was aware of the incident,[10] had a duty to investigate it, or had received reports regarding the incident.

The trial court signed an order denying the Plea to the Jurisdiction.[11] This interlocutory appeal ensued.[12]

## Standard of Review

Subject matter jurisdiction is implicit in a court's power to decide a case. *City of Hous. v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (citing *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 553–54 (Tex. 2000)). To establish subject matter jurisdiction, a plaintiff must allege facts that "affirmatively demonstrate" the court's jurisdiction to hear his claims. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (citing *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012)). "Whether a court has subject matter jurisdiction is a question of law." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

"A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction." *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) (citing *Bland*, 34 S.W.3d at 554); *TitleMax of Tex., Inc. v. City of*

---

[10]    HFC conceded in its discovery responses that its employee "witnessed [Valma's] injury."

[11]    The Plea was considered on written submission. No hearing was conducted.

[12]    *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (identifying denial of plea to jurisdiction by government unit as ruling subject to interlocutory appeal).

*Austin*, 639 S.W.3d 240, 245 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Our review of a plea to the jurisdiction is *de novo* and mirrors the standard of review for a traditional motion for summary judgment. *Miranda*, 133 S.W.3d at 226; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). We "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Miranda*, 133 S.W.3d at 228.

"[A] court deciding a plea to the jurisdiction . . . may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland*, 34 S.W.3d at 555. If the defendant meets its burden to establish the trial court lacks jurisdiction, the burden shifts to the plaintiff, who must then show there is a question of material fact as to the jurisdictional issue. *Garcia*, 372 S.W.3d at 635. If the evidence raises a fact issue concerning jurisdiction, the plea cannot be granted, and the issue must be resolved by the trier of fact. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010). If, on the other hand, the evidence is undisputed or does not raise a fact issue, the plea must be determined as a matter of law. *Id.*

**Governmental Immunity**

Governmental immunity protects political subdivisions of the state from lawsuits and liability for monetary damages unless their immunity is waived by the

Legislature. *See Schroeder v. Escalera Ranch Owners' Ass'n, Inc.*, 646 S.W.3d 329, 332 (Tex. 2022); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) ("Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages."). It is undisputed that HFC is a government entity. Waivers of governmental immunity "must be clear and unambiguous" and any purported waiver of immunity must be strictly construed in favor of retaining immunity. *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 303 (Tex. 2019) (citing *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012)).

The TTCA waives immunity from suit for negligent acts in certain circumstances. TEX. CIV. PRAC. & REM. CODE §101.021. Germane to the issues here, waiver is available in a suit for personal injury arising from the use of "tangible personal or real property" if the governmental unit would, if a private person, be liable to the claimant under Texas law. *Id.* 101.021(2). To rely on the waiver, a claimant must notify the government entity of the negligent acts not later than six months after the day of the incident at issue. *Id.* 101.101(a). Failure to comply with the TTCA's notice provisions requires dismissal. *See City of Houston v. Huff*, No. 01-22-00496-CV, 2023 WL 8938406, at *8 (Tex. App.—Houston [1st

12

Dist.] Dec. 28, 2023, no pet.) (mem. op.) (citing *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 775–76 (Tex. 2018)).

"The notice must reasonably describe the injury, the time and place of the incident, and the incident itself," unless the governmental unit has actual notice of the injury. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 546 (Tex. 2010). The TTCA notice requirements "allow[ ] [a] governmental [unit] to investigate claims while the facts are fresh, to guard against unfounded claims, to settle claims, and to prepare for trial." *Anderson v. Waller Cnty. & Waller Cnty. Sheriff's Dep't*, No. 01-20-00097-CV, 2021 WL 3042677, at *6 (Tex. App.—Houston [1st Dist.] July 20, 2021, pet. denied) (mem. op.) (quoting *City of Houston v. Miller*, No. 01-19-00450-CV, 2019 WL 7341666, at *3 (Tex. App.—Houston [1st Dist.] Dec. 31, 2019, no pet.) (mem. op.)).

The TTCA notice requirement is waived if the governmental entity has "actual notice" of the claim. *Tenorio*, 543 S.W.3d at 776 (citing TEX. CIV. PRAC. & REM. CODE § 101.101(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995)). Actual notice is not established merely because a government unit investigates an accident as part of its routine safety procedures or should have known it might be at fault based on its investigation.[13] *Id.* (citing *Tex. Dep't of Crim. Just. v. Simons*,

---

[13] *See City of Houston v. Huff*, No. 01-22-00496-CV, 2023 WL 8938406, at *8 (Tex. App.—Houston [1st Dist.] Dec. 28, 2023, no pet.) (mem. op.) ("An incident that triggers an investigation and accident report will impute actual notice where there

140 S.W.3d 338, 347–48 (Tex. 2004)). Nor is "[m]ere knowledge that an incident has occurred . . . enough to establish actual notice." *Univ. of Tex. Health Sci. Ctr. at Hous. v. McQueen*, 431 S.W.3d 750, 755 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Cathey,* 900 S.W.2d at 341). Rather, the governmental entity "must have knowledge that amounts to the same notice to which it is entitled under section 101.101(a) [of the TTCA], which 'includes subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury.'" *Id.* (citing *Arancibia,* 324 S.W.3d at 548–49); *Tenorio*, 543 S.W.3d at 776. "[A]ctual notice means the governmental unit is subjectively aware that it may be responsible for death, injury, or property damage in the manner ultimately alleged by the claimant." *Reyes v. Jefferson Cnty.*, 601 S.W.3d 795, 798 (Tex. 2020) (quoting *Worsdale v. City of Killeen*, 578 S.W.3d 57, 77 (Tex. 2019)).

In *Cathey*, the Texas Supreme Court held that actual notice comprises knowledge of three elements:

> (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved.

900 S.W.2d at 341. Governmental entities "have actual notice to the extent that a prudent entity could ascertain its potential liability stemming from an incident,

is evidence to connect the accident to an action or omission by the governmental unit such that it should have known of its potential culpability.") (citing *Angleton Danbury Hosp. Dist. v. Chavana*, 120 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2003, no pet.)).

14

either by conducting a further investigation or because of its obvious role in contributing to the incident." *Nat'l Sports & Spirit, Inc. v. Univ. of N. Tex.*, 117 S.W.3d 76, 80 (Tex. App.—Fort Worth 2003, no pet.).

**Valma Did Not Establish Actual Notice**

Valma did not provide HFC with timely written notice of his claims under the TTCA. He must thus establish that HFC had actual knowledge of the three required *Cathey* elements.

HFC argues that even though its employee learned of Valma's accident the day it occurred, Valma did not establish that within six months of the incident, HFC had actual notice that it was at fault in causing or contributing to Valma's injury or that HFC knew the identity of the parties involved in the incident. Valma argues, as he did in the trial court, that HFC's discovery responses and investigative report establish its actual knowledge of the event and that it can be "reasonably inferred" that HFC received timely notice of IATSE's findings that "an extremely bright light shining down on the pipes[] ma[de] it difficult for [Valma] and other workers to see the top of the pipes." Valma argues that at a minimum, a fact issue exists over whether HFC had actual notice of the incident and as to HFC's culpability.

**The First *Cathey* Element: Knowledge of Injury**

Under the first *Cathey* element, Valma had to prove HFC had actual knowledge of his injury. Because it is undisputed that HFC learned of Valma's injury on the day it occurred, the threshold issues here involve the second and third *Cathey* elements—whether HFC had actual notice of its specific (alleged) fault in producing or contributing to Valma's injuries and whether HFC had actual notice of the parties involved in the incident.

**The Second and Third *Cathey* Elements:  Fault and Identification**

In *Simons*, the Supreme Court explained the second *Cathey* element in detail:

> What we intended in *Cathey* by the second requirement for actual notice was that a governmental unit have knowledge that amounts to the same notice to which it is entitled by section 101.101(a). That includes subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury. . . . It is not enough that a governmental unit should have investigated an incident . . . or that it did investigate, perhaps as part of routine safety procedures, or that it should have known from the investigation it conducted that it might have been at fault. If a governmental unit is not subjectively aware of its fault, it does not have the same incentive to gather information that the statute is designed to provide, even when it would not be unreasonable to believe that the governmental unit was at fault.

*Simons*, 140 S.W.3d at 347–48 (internal citation omitted); *see also Tenorio*, 543 S.W.3d at 782 ("[A]ctual notice is satisfied when the governmental unit has

sufficient information to create 'the same incentive to gather information' as would arise from formal notice.") (quoting *Cathey*, 900 S.W.2d at 348).

The second *Cathey* element is thus satisfied when the government entity has "subjective awareness of *potential* fault" as alleged by the plaintiff. *Id.* (Emphasis in original.); *see also Tex. Tech Univ. Health Scis. Ctr. v. Lozano*, 570 S.W.3d 740, 745 (Tex. App.—El Paso 2018, pet. denied) (noting "no formal accusation need be made against the governmental entity to show its awareness of fault") (citing *Simons*, 140 S.W.3d at 347). To prove actual notice of the second *Cathey e*lement, the record must "bear[] more than a scintilla of evidence that [the defendant] had subjective knowledge of its alleged fault producing or contributing to the harm that occurred." *Tenorio*, 543 S.W.3d at 781; *see also McQueen*, 431 S.W.3d at 755 (noting that "mere knowledge" that accident occurred does not constitute actual notice under *Cathey*). And under the third *Cathey* element, the government must have knowledge of the parties involved in the incident at issue. *Cathey*, 900 S.W.2d at 341.

No such evidence was presented here. Neither the IATSE Report nor the HFC Security Report provides the requisite actual notice of fault or identification of the parties.

17

## A.    The HFC Security Report

The one-page HFC "Security Incident Report" does not mention HFC or any other defendant in its description of the accident or assign blame to any entity. The report also contains no opinion or conclusion about HFC's involvement. "[M]erely investigating an accident does not provide a government unit with actual notice." *Lozano*, 570 S.W.3d at 745–46; *see also Tenorio*, 543 S.W.3d at 776 (noting actual notice requirement is not satisfied just because governmental unit should have investigated, did investigate accident, or should have known it might have been at fault based on its investigation).[14]

While the report states the accident happened backstage at Jones Hall, Valma did not allege or produce evidence that HFC was responsible for the renovation taking place backstage. Indeed, his pleadings allege that Forney Construction and The Foundation for Jones Hall were responsible for backstage operations and the construction site management at Jones Hall. Moreover, in HFC's interrogatory responses, which Valma attached to his response to HFC's Plea, HFC stated it was not involved in the renovation project and that The Foundation for Jones Hall was responsible for the backstage lighting.

We thus conclude the HFC Report did not confer actual notice on HFC.

---

[14]    The Texas Supreme Court has stated that *Cathey* "cannot fairly be read to suggest that a governmental unit has actual notice of a claim if it could or even should have learned of its possible fault by investigating the incident." *Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 347 (Tex. 2004).

18

**B.    The IATSE Report**

The IATSE report is not as easily dismissed.  The IATSE report states that:

> The facility the incident occurred in is now undergoing renovation
> . . . . The managing company at this facility has assured us that the
> lighting location and positioning will be addressed during this
> remodeling.    The facility also assured us that a second chain/guard
> restraint will be added during this renovation.  It will be painted safety
> yellow.

Valma, however, did not establish HFC received the IATSE Report within six

months of the incident.    Nor does the IATSE Report identify HFC as the

"managing company" that "assured [the investigator] that the lighting location and

positioning will be addressed[.]"   The IATSE Report identifies "lack of training

and an engineering control," and a flawed "engineering design" as the cause of the

incident, but it does not indicate who is responsible for those deficiencies.

Thus, even assuming HFC received the IATSE Report within six months of

the accident, the report did not provide actual notice of fault to HFC.  The Texas

Supreme Court's decision in *City of Dallas v. Carbajal,* 324 S.W.3d 537 (Tex.

2010) is instructive.  In *Carbajal*, the plaintiff sued the City of Dallas for injuries

sustained after driving onto an excavated road.  *Id.* at 538.  After she sued the City,

the plaintiff failed to provide formal notice under the TTCA but claimed the City's

police report "provided the City with subjective awareness of the claim, thereby

establishing actual notice[.]"   *Id*.   The trial court denied the City's plea to the

jurisdiction and the court of appeals affirmed.  *Id.*  In reversing the court of appeals

19

and rendering judgment for the City, the Supreme Court noted that even though both parties agreed the road was improperly blocked, the police report did not provide actual notice of fault to the City:

> [T]he report here did not provide the City with subjective awareness of fault because it did not even imply, let alone expressly state, that the City was at fault. The report only describes what apparently caused the accident (missing barricades). It does not say who failed to erect or maintain the barricades. Carbajal ignores the possibility that a private contractor or another governmental entity (such as the county or state) could have been responsible for the road's condition. Indeed, after investigating the accident, the City determined that the Texas Department of Transportation was at fault. Simply put, the police report here is no more than a routine safety investigation, which is insufficient to provide actual notice.

*Id.* at 539. Similarly, the IATSE Report appears to be a routine safety investigation. It does not identify HFC as a culpable party or the entity responsible for "lack of training and an engineering control" or faulty "engineering design."[15]

The Texas Supreme Court's opinion in *Tenorio* also is illustrative. In *Tenorio*, one person was killed and another severely injured when they were struck head-on by a vehicle driving the wrong way. 543 S.W.3d at 774. Shortly before the collision, the San Antonio police had been pursuing the driver but once he

---

[15] *Compare with Huff*, 2023 WL 8938406 at *4, 8 (holding police crash report that "expressly assign[ed] fault" to officer who caused collision was sufficient to create fact issue as to whether city had subjective knowledge of plaintiff's injuries and of alleged fault in contributing to injuries); *Worsdale v. City of Killeen*, 578 S.W.3d 57, 67 (Tex. 2019) (holding actual notice of fault was established when city "knew of allegations that it was responsible for maintaining a road and that the failure to maintain the road had been identified as a contributing factor" to plaintiff's injuries).

entered the freeway going the wrong way, the officers stopped pursuing him. *Id.* The plaintiff sued the City of San Antonio, which filed a plea to the jurisdiction alleging it did not have actual notice of its fault in causing the collision. *Id.* The plaintiff relied on the crash report, witness statements, and a case report to establish the city "had subjective awareness its officers were at fault in several ways" and that "their fault was related to the collision and resulting injuries." *Id.* at 777. The trial court denied the plea and the court of appeals affirmed, holding a fact issue as to whether the city had actual notice of the claims precluded the granting of the plea. *Id.* at 775.

In reversing the court of appeals, the Supreme Court noted that even though the crash report "listed a factor and condition contributing to the crash as 'Fleeing or Evading Police,'" it was "not an express statement or even an implication that the officers of the City were at fault in regard to the collision." *Id.* at 778. The court concluded, "[N]othing in the crash report, witness statements, or case report indicate, either expressly or impliedly, that the [police] subjectively believed its officers acted in error by initiating or continuing the pursuit such that they were in some manner responsible for the injuries." *Id.* The same is true here. There is no

"express statement" or "implication" that HFC was responsible for the accident. And there is no indication HFC subjectively believed it acted in error.[16]

We thus conclude neither the HFC Security Report nor the IATSE Report provides the requisite actual notice of fault or identification of parties under the second or third *Cathey* elements. *See Carbajal,* 324 S.W.3d at 539 (holding "routine safety investigation" reports are insufficient to provide actual notice).

**HFC's Discovery Responses and OSHA File Materials**

Finally, we address Valma's argument that HFC's discovery responses and OSHA file materials evinced HFC's actual notice of Valma's claims.

According to Valma, OSHA requested that an investigation be conducted, and responsive materials were completed within ten days of the accident. As part of the documents provided to OSHA, Valma argues it was "determined that the chief contributing condition that caused the incident was an extremely bright light shining down on the pipes, making it difficult for [Valma] and other workers to see the top of the pipes." In its response to the Plea to the Jurisdiction, Valma also argued that HFC's interrogatory answers established HFC "became aware of the

---

[16] *See generally Tex. Dep't of Pub. Safety v. Rodriguez*, No. 13-22-00052-CV, 2023 WL 5122522, at \*4 (Tex. App.—Corpus Christi–Edinburg Aug. 10, 2023, no pet.) (mem. op.) (holding Department of Public Safety lacked actual notice it was at fault in collision involving its officer, when "nothing in the crash report, or investigative report indicate[d], either expressly or impliedly, that DPS subjectively believed its trooper acted in error . . . such that they were in some manner responsible for the alleged injuries.").

incident on or about June 14, 2022," the day it occurred, and that its facilities superintendent was "working at Jones Hall" on June 14, 2022 and "witnessed [Valma's] injury."

Valma argues, without citation to authority, that from these responses, it can be "reasonably inferred" that (1) HFC, "as the facilities superintendent for the Jones Hall renovation project, and who had an employee present at the project, did receive notice of the findings of the [OSHA] investigation," and that (2) the facilities superintendent who witnessed the accident "would have some duty, whether active or supervisory, regarding the lights present at the scene." We reject Valma's arguments.

Valma concedes it has no "direct evidence" that HFC received a copy of the OSHA file materials, and it also has no evidence that the HFC employee who was at Jones Hall on the day of the accident had any duty "regarding the lights present at the scene." There is no basis for the argument that the HFC employee had a duty regarding the lights at the scene merely because she witnessed the incident. *See generally Coronado v. Schoenmann Produce Co.*, 99 S.W.3d 741, 756 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("[W]e cannot draw a reasonable inference from [defendant company executive's] mere view of the accident, if indeed he saw it happen, that he was exercising the right to control details of [the

injured party's] work.").[17]  Indeed, the only evidence before the trial court on this issue was HFC's interrogatory responses stating HFC had no involvement in the renovation project and that The Foundation for Jones Hall was the entity responsible for the backstage lighting.

We thus conclude HFC did not have actual notice of Valma's claims, and it thus retained its immunity from suit.[18]  We sustain HFC's first issue.

## Conclusion

We reverse the trial court's interlocutory order denying HFC's Plea to the Jurisdiction and render judgment dismissing Valma's claims against HFC for lack of jurisdiction.

---

[17]  Although *Coronado* is not a jurisdiction or "actual notice" case, we find it is instructive in this limited capacity. *Coronado v. Schoenmann Produce Co.*, 99 S.W.3d 741 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). *Coronado* was the appeal of a take-nothing judgment. *Id.* at 744.  One of the issues on appeal turned on whether the defendant, Schoenmann, had the right to control the details of the plaintiff's work when he was injured. *Id.* at 755.  The Schoenmann employee who witnessed the accident was the company's vice president, general counsel, chief financial officer, and the officer in charge of safety for the separate company that employed the plaintiff. *Id.* at 756.

[18]  In light of our disposition, we need not reach HFC's remaining issues on appeal. *See City of Beaumont v. Armstead*, No. 09-15-00480-CV, 2016 WL 1053953, at *8 (Tex. App.—Beaumont Mar. 17, 2016, no pet.) (mem. op.) (declining to address appellant's second issue on appeal "because a favorable disposition on that issue would not afford any greater relief.") (citing TEX. R. APP. P. 47.1).

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Dokupil.